## CABLE *v.* ELLIS.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE
NORTHERN DISTRICT OF ILLINOIS.

Submitted January 14th, 1884.—Decided February 4th, 1884.

### *Removal of Causes.*

After a suit in equity involving title to real estate and priority of lien had been long pending in a State court, and the highest court in the State had decided some of the points in controversy, and had remanded the cause to the court below to have other issues determined. A became interested in the property by grant from one of the parties to the suit, and intervened in it by leave of the State court to protect his rights at a time when the right of removing the cause from the State court to the Federal court had expired as to all the parties : *Held,* that under the circumstances the intervention of A was to be regarded as incident to the original suit ; and that he was subject to the disabilities resting on the party from whom he took title ; and that the time for removal having expired before he intervened, his right of removal was barred by that fact.

Bill in equity to determine priority of liens upon real estate in Illinois and for other relief. The only question decided was as to the right of removal of the cause from a State Court to a Circuit Court of the United States. The facts which make up the case are stated in the opinion of the court.

*Mr. Charles M. Osborn* for appellant.

*Mr. George W. Spahr* for appellee.

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

This is an appeal from an order of the Circuit Court remanding a suit removed from a State court. From the confused mass of pleadings, exhibits, proofs, orders, and decrees, making a volume of more than five hundred printed pages, sent here as a transcript of the record below, and the reports of the decisions of the Supreme Court of Illinois in *Sumner* v. *Waugh*, 56 Ill. 531, *Cable* v. *Ellis*, 86 Ill. 525, and *Ellis* v. *Sisson*, 96 Ill. 105, referred to on both sides as part of the case, we have, with the help of the briefs of counsel, extracted the following facts, which, in our opinion, are decisive of the present controversy:

On the 3d of June, 1858, Thomas B. Ellis bought of John M. Waugh and Henry B. Ellis certain lands and mill property in Illinois. Waugh and Henry B. Ellis were at the time indebted to Thomas B. Ellis to the amount of $8,000 or thereabouts, and the mill property was encumbered by a mortgage to Benjamin T. Sisson for $9,280. Thomas B. Ellis paid for the property by releasing the debt due himself, assuming the mortgage to Sisson, and giving his own notes to Waugh and Henry B. Ellis, secured by mortgage on the property for $14,984.54. On the 30th of September, 1858, Thomas B. Ellis entered into a written contract with Sisson and John B. Rathbun for the sale, release, and conveyance of "all his paid in interest" in the property, for which the purchasers were to pay as in the agreement specified, including with the rest such a sum to Thomas B. Ellis personally as from authenticated bills it should appear he had "paid in." To secure the payment of such sum as should be found to be due him a mortgage was to be given on the property. Under this contract possession was delivered to the purchasers.

Disputes having arisen as to the amount of the "authenticated bills," Thomas B. Ellis, on the 21st of March, 1861, filed a bill in chancery in the Mercer County Circuit Court to enforce a specific performance of the contract. To this bill Waugh, Sisson, and Rathbun were made defendants, and the prayer was that the mortgages of Waugh and Henry B. Ellis to Sisson, and Thomas B. Ellis to Waugh and Henry B. Ellis

might be cancelled, and that the amount of purchase money due Thomas B. Ellis from Sisson and Rathbun might be ascertained and adjudged to be the paramount lien on the property in the hands of the purchasers. As to Waugh, the averments were, in substance, that he was "in fact and in equity" a purchaser of the property with Sisson and Rathbun, and that by the terms of the contract, the notes and mortgage of Thomas B. Ellis, then held by Waugh, and the mortgage to Sisson, were to be cancelled and a first lien on the property given to Thomas B. Ellis as security for the purchase money to be paid to him.

In 1862 Sisson assigned his notes and mortgages to Austin, Sumner & Co., and in 1864 they began a suit for foreclosure in the Mercer County Circuit Court, making Waugh, Sisson, Thomas B. Ellis, and Henry B. Ellis defendants. Thomas B. Ellis answered, and also filed a cross-bill, in which he set up his sale of the property and a cancellation under that sale of the mortgage to Sisson before the transfer to Austin, Sumner & Co. The Circuit Court decreed against Austin, Sumner & Co., and dismissed their bill, but upon appeal to the Supreme Court, the decree dismissing the bill was reversed in 1869, but the lien of Austin, Sumner & Co. was postponed to that of Thomas B. Ellis for the purchase-money under his contract of sale. As to the mortgage of Thomas B. Ellis to Waugh and Henry B. Ellis, the language of the opinion is as follows:

"This contract postponed also the mortgage in question to the mortgage executed by T. B. Ellis to Waugh and H. B. Ellis. They were not parties to it, and could not be bound by its provisions. Although the contract seems to contemplate that their mortgage was also to be cancelled, it does not appear how or in what mode, and not being parties to the agreement, they cannot be affected by it. It is, therefore, the first lien on the property, and must be so held. The whole case, somewhat complicated, it is true, shows a contest between equities. That the complainants have some which should have been regarded by the Circuit Court and decreed to them, we cannot doubt. The bill should not, therefore, have been dismissed. In order that the equities of the complainants may be enforced, it seems necessary that there should be a foreclosure of the Waugh and Ellis mortgage. . . .

The pleadings are not framed with a view to any relief as to the Waugh and Ellis mortgage, or as to any substitution of the complainants to the rights of Waugh in the Waugh and Ellis mortgage. Leave will be given to amend the pleadings as the parties may be advised, and to take further proofs." *Sumner* v. *Waugh,* 56 Ill. 541, 542.

The case was then remanded for further proceedings in conformity with the opinion, in which suggestions were made as to what should be done if the Waugh and Ellis mortgage should be found to be a valid and subsisting lien.

After this decision Philander L. Cable took from Waugh an assignment of the note and mortgage of Thomas B. Ellis to Waugh and Henry B. Ellis, and in 1872 began a suit in the Mercer County Circuit Court for a foreclosure. To this suit Thomas B. Ellis, Sisson, and Austin, Sumner & Co. were made defendants. Thomas B. Ellis answered, setting up his contract of sale, and claiming a cancellation of the mortgage thereby.

On the 6th of May, 1873, an order was entered in the Circuit Court consolidating the three suits, to wit, that of Thomas B. Ellis, that of Austin, Sumner & Co., and that of Philander L. Cable. From that time these three suits were proceeded in as one and involving the same general matter. On the 10th of June, 1875, the Circuit Court entered a decree establishing the claim of Thomas B. Ellis as against Cable. From this decree Cable appealed to the Supreme Court, where, in 1877, after holding that the Sisson mortgage could not be enforced as against Thomas B. Ellis, it was said in the opinion delivered:

"It was doubtless the intention of the contract of September 30th that the latter mortgage also [that to Waugh and Ellis,] as well as the former [that of Sisson] should be cancelled, so as to give T. B. Ellis a superior lien upon the property for the security of the payment of his paid-in interest, and for the carrying out of such intention, and being impressed with the justice of the claim of T. B. Ellis that he should have such security, we have anxiously sought for some satisfactory ground upon which we might rest the support of such a claim, but we have not been able to discover any. . . . The written contract of September

30th, 1858, was not signed by Waugh, and we cannot hold him as bound by that contract to discharge and release his mortgage, although we may strongly suspect there was a secret understanding to that effect." *Cable* v. *Ellis*, 86 Ill. 539, 540.

The result was a decision that the Waugh and Ellis mortgage should be first paid, and an order was entered remanding the suit to the Circuit Court for further proceedings in accordance with the opinion.

The case was redocketed in the Circuit Court at or before the May term, 1878, and on the 25th of November, Thomas B. Ellis, by leave of the court, filed an amended bill, in which it was averred, in substance, that while Waugh did not sign the contract of purchase by Sisson and Rathbun, he did in fact agree with Ellis at the time that if the sale was made on the terms proposed, he would postpone his mortgage on the property to the lien of Ellis for the purchase money and release Ellis from the payment of the notes. Answers were filed and new testimony taken. Upon the hearing in the Circuit Court the lien of Cable, in preference to that of Thomas B. Ellis, was established, and Ellis appealed. In 1880 the Supreme Court reversed the decree of the Circuit Court, and in the opinion, when speaking of the former decision in the case, it was said:

"There was no proof of such a joint written contract, or of such a joint contract by Waugh, Sisson and Rathbun as alleged. The allegations and proofs did not agree. The amendment which has been made to the bill of Ellis, since the case was remanded, removes the difficulty which before existed. It sets up a separate verbal agreement on the part of Waugh to release the mortgage."

Then, after an examination of the testimony, the opinion proceeds:

"We are satisfied, from the evidence, that outside of this written agreement there was a verbal agreement between Waugh and Ellis to the purport that if Ellis would sell out to Sisson and Rathbun, he, Waugh, would accept such sale in satisfaction of the debt of Ellis to Waugh and H. B. Ellis. We think that by virtue of this agreement, and the transfer of the property, which

was made by T. B. Ellis, and the full enjoyment of it ever since by Sisson, Rathbun, and Waugh among them, the notes and mortgage to Waugh and H. B. Ellis were satisfied ; and as those to Sisson are also satisfied, that T. B. Ellis is entitled to the first lien on the property for his paid-in interest."

Cable thereupon filed a petition for rehearing, and from the opinion it appears that one of the grounds relied on was that the court below had no right to allow the amendment of the bill after the decision on the former appeal, by setting up in substance that the agreement of Waugh was by parol instead of in writing, as was originally alleged ; but this petition was overruled and the case remanded to the Circuit Court for further proceedings in accordance with the opinion. *Ellis* v. *Sisson*, 96 Ill., at 114, 119, 122.

When the case got back to the Circuit Court, on the 10th of February, 1881, a receiver of the property was appointed on the application of Thomas B. Ellis and against the objections of Cable.

During the year 1876, while the several suits were pending, Philander L. Cable caused a small part of the property to be laid off into lots, one of which went into the possession of Hiram Cable. On the 14th of May, 1881, after the receiver was appointed, Hiram Cable filed in the Circuit Court his petition of intervention in the cause, on the ground that he was "pecuniarily interested in the subject-matter of the litigation, . . . and that the orders and decrees that may be entered concerning the same may very materially affect him pecuniarily and conclude him with respect to his rights in the premises." He then states in substance that

"on or about the — day of December, 1876, Philander L. Cable was in the actual and exclusive possession of part of the premises described in the pleadings, and represented that he had bought the Waugh and Ellis mortgage ; that the mortgage had been declared by the Supreme Court to be a first lien on the property ; that in a short time there would be a final and conclusive decree for a sale of the property ; that he should buy the property at

the sale, and that in that way and others he would acquire an indefeasible title in the course of two or three years at the most."

Relying on these representations, Hiram Cable, " on the said—day of December, 1876," orally agreed with Philander Cable to purchase one of the lots that had been laid out, and to pay the reasonable and fair value thereof when a title was made. Under this agreement, with the leave of Philander, he went into the possession of the lot, relying on

" the said decision and determination of the said Supreme Court, and then being fully advised by the pleadings and proceedings herein of the extent and character of the claim of the said Thomas B. Ellis in and to said premises, and fully believing the said claim of the said Ellis was not other or different than he had himself stated the same in his pleadings, and that he would forever thereafter be estopped in equity and right, as against your petitioner or the said Cable, to assert and maintain that the same was other or different than as stated in his said pleadings herein, your petitioner did enter upon and take possession of said lot and parcel of said premises and has ever since remained in possession of the same."

After entering into possession, and while the rights of the parties remained the same, he erected on the property permanent and lasting improvements of the value of $1,800. He then charges that long after the improvements were made it was adjudged and determined by said Supreme Court:

" upon and by virtue of a new and distinct claim (not germane to or consistent with his original claim in the premises) made and asserted by said Ellis, in and by an amendment to his pleadings, long since said improvements were so made, . . . that the said mortgage so purchased by said Cable from said Waugh was not a first lien upon said premises, but that the same was in equity . . . satisfied and discharged,"

and the lien of Ellis was established for more than the property and all the improvements thereon were worth.

" But your petitioner says that the said Ellis ought not to be allowed in a court of equity to insist and maintain, as against your

petitioner, such a new claim, so made by his amendment aforesaid, but that in equity and good conscience he ought to be stayed and estopped from so interposing the same. That the said Cable has in all things acted in good faith and fairly with your petitioner, and has strenuously endeavored to maintain his claimed rights in the premises, but that, as your petitioner believes, in case such premises shall be sold in behalf of the said claim of the said Ellis, without the decree and direction of this court that the value of said improvements shall be first paid to your petitioner out of the proceeds of such sale, your petitioner will wholly lose all costs, disbursements, labor, and expenses he has incurred in making the same, as in such case the said Cable will not purchase said premises at such sale, and, as your petitioner is advised, that under the facts and circumstances aforesaid, the said Cable will not be liable in law or equity to your petitioner for the same, or in any respect, on account of said agreement so made with him as aforesaid."

He then asserted the priority of the lien of the Waugh mortgage over that of Sisson, and that, although Ellis had notice of his acts and proceedings, no objection was made to what he did in the way of improvements. After referring to the pleadings and proceedings in the cause for further particulars, he submitted his rights to the court, and prayed that, if the premises should be sold under the decree,

"it shall be ordered and directed that out of the proceeds of such sale there shall be paid to your petitioner such part thereof as shall bear the same ratio to the whole amount of the proceeds of such sale, as the value of said improvements shall bear to the whole value of said premises, or an amount equal to the value of said improvements, such ratio or value of said improvements to be first determined, as the court shall order and direct, in accordance with chancery practice, and for such other and further relief in the premises as shall seem meet-and proper."

This petition was answered by Ellis on the 21st of July, and by the other parties in opposition within a few days after, but on the 29th of July Ellis moved to strike the intervening petition from the files for reasons stated. Before this motion was disposed of, and at the same term, to wit, on the 30th of July,

Hiram Cable filed his petition for the removal of the causes as consolidated to the Circuit Court of the United States for the Northern District of Illinois, alleging that the value of the matter in dispute exceeded $500; that he was a citizen of Iowa and Ellis a citizen of Missouri, and Austin, Sumner & Company citizens of Massachusetts; that none of the other parties to the causes were citizens of Iowa; that "there is a controversy presented and made by his intervening petition . . . which is wholly between citizens of different States, and which can be fully determined as between the sole parties interested therein in the Circuit Court of the United States," and that such controversy was solely between him and Ellis and Austin, Sumner & Co.

On the 29th of August the State court made an order staying all further proceedings in that court and transferring the causes to the Circuit Court of the United States. Afterwards all parties entered their appearance in the Circuit Court, and thereupon Ellis moved to remand. This motion was granted on the 6th of April, 1882, and from that order the present appeal was taken.

Both Philander Cable and Hiram Cable acquired their respective interests in the property involved in this litigation during the pendency of the suit brought by Thomas B. Ellis in 1861, to establish his alleged superior lien. Philander Cable is concluded by all that has been done, because he was and is an actual party to the suit. There has been no time since the first term of the Mercer County Circuit Court, after the act of March 3d, 1875, c. 137, was passed, that he could remove the suit from the State court. *Removal Cases,* 100 U. S. 457. Hiram Cable made the arrangement with Philander Cable on which all his rights depend long after that time had gone by. In fact, the decree of June 13th, 1875, was the result of a hearing begun after the act went into effect. So that the question here is whether Hiram Cable has by his petition of intervention, after twenty years of litigation between the original parties, introduced a new and separate controversy into the suit, which entitles him on his own application to transfer the whole case to the Circuit Court of the United States.

If Hiram Cable is not to be concluded by anything done in his absence, he ought not to be allowed to force himself into the suit at this late day. No sale made under a decree to which he is not actually or constructively a party can cut off his rights. If he can be bound by a decree in his absence, it is because he has been all the time represented in the suit by Philander Cable, under whom he claims, and as an intervenor he can do nothing that might not have been done for him by his representative without his intervention. He took his place by intervention in the suit subject to all the disabilities that rested at the time on the party in whose stead he is to act. If his application to have his rights in respect to the improvements he has put on the property settled in this suit can be entertained at all, it will be only as an incident to the original controversy, and whatever would bar a removal of suit before he intervened will bar him afterwards, even though by his intervention he may have raised a separate controversy.

This disposes of the case, for, as has already been seen, the right to remove this suit was barred long before Hiram Cable intervened. Without, therefore, determining whether Hiram Cable can claim the benefit of his improvements, notwithstanding the pendency of the suit, or whether, if his petition had been filed in time, he would have been entitled to a removal of the suit on the showing made,

*We affirm the order remanding the cause.*