## RICHMOND & D. R. Co. *v.* FINDLEY and others.[1]

*(Circuit Court, N. D. Georgia.* June 14, 1887.)

1. REMOVAL OF CAUSES—SUBSTITUTED PARTY—RIGHTS OF.

   Where a railroad company, by a contract of perpetual lease, acquired property of the lessor for which an action of ejectment was pending, *held*, the lessees' right of removal was only such as existed in the lessor.

2. SAME—INDEPENDENT CONTROVERSY—FORMAL PARTIES.

   Where at the time of the lease an action of ejectment was pending against certain of the property so transferred, and the lessee, instead of defending the action, sets up by bill in equity only such matters as could by the law of the forum have been pleaded to the action of ejectment, such suit does not constitute a distinct and independent controversy, though the formal parties to the record are different. And such cause cannot be removed into the federal court unless the original action might also have been removed.

In Equity. Removal of cause. On motion to remand.

August 27, 1880, James A. Findley, as administrator of the estate of Elizabeth Findley, brought an action of ejectment in Hall superior court against James Weaver, tenant in possession, to recover a certain lot of land in Hall county. Weaver was in possession as an employe of the Atlanta & Charlotte Air Line Railway Company, a Georgia corporation. This company claimed title to said lot of land, upon which was located a part of its road-bed and track, and certain houses for the use of its employes. The Atlanta & Charlotte Company, on the twenty-sixth of March, 1881, executed a contract of perpetual lease of all its property, (including this lot of land sued for,) to the Richmond & Danville Railroad Company, a Virginia corporation. Neither company caused itself to be made a formal party defendant to the ejectment suit, as might have been done in Georgia. The Richmond & Danville Company, on August 25, 1884, filed a bill in equity in Hall superior court against James A. Findley, as administrator, James A. Findley, individually, and the other heirs at law of Elizabeth Findley, praying an injunction against the further prosecution of the ejectment suit, and for relief. Upon this a temporary injunction issued. February 18, 1885, the Richmond & Danville Company filed its petition for the removal of the equity cause to the United States circuit court for the Northern district of Georgia, on the ground of citizenship, under section 2 of the act of March 3, 1875, and the cause was accordingly removed. Upon the hearing in the circuit court, counsel for respondents moved for an order remanding the cause to the state court.

*Pope Barrow, Hopkins & Glenn*, and *S. C. Dunlap*, for complainants.

*John B. Estes, Claude Estes*, and *W. F. Findley*, for respondents.

NEWMAN, J. During the hearing of this case counsel for defendants suggested to the court that the case was improperly removed to this court,

---

[1] Reported by W. A. Wimbish, Esq., of the Atlanta bar.

and moved to remand it to the state court. The motion was only briefly argued at that time, without production of authority on either side. The court reserved its decision on the question, and heard the case to a conclusion, reserving its decision on the entire case also. Since the hearing, counsel on both sides have furnished some authorities on the question of removal, and I have examined the question and authorities with considerable care myself. This case was removed under the second section of the act of March 3, 1875. The supreme court of the United States in the case of *Gibson* v. *Bruce*, 108 U. S. 561, 2 Sup. Ct. Rep. 873, decided that a case could not be removed from a state court under the act of 1875, unless the requisite citizenship of the parties existed both when the suit was begun, and when the petition for removal was filed. In the case of *Cable* v. *Ellis*, 110 U. S. 389, 4 Sup. Ct. Rep. 85, a suit in equity involving titles to real estate, and priority of lien, which had been long pending in the state court when Cable became interested in the property by grant from one of the parties interested in the suit, and intervened in the case by leave of the state court at a time when the right of removal from the state to the federal court had expired as to the original parties, it was held that he was subject to the disabilities of the party from whom he took title, and the time for removal had expired, and that his right of removal was barred by that fact. In the case of *Railroad Co.* v. *Shirley*, 111 U. S. 358, 4 Sup. Ct. Rep. 472, it was held that the substituted party comes into a suit subject to all the disabilities of him whose place he takes, so far as concerns the right of removal of the cause; and the cases of *Gibson* v. *Bruce*, and *Cable* v. *Ellis*, *supra*, cited with approval. The doctrine of these cases is admitted by counsel for complainant here, but they say this is a new and distinct suit, and that the fact that the heirs at law of Elizabeth Findley are made parties to their bill, and that they ask special relief against them as such, makes it a different and distinct case from the ejectment suit. All the rights that the Richmond & Danville Company had or could set up in this controversy, either at law or in equity, are such rights as they acquired from the Atlanta & Charlotte Company. Before the agreement between these two companies, the administrator of the estate of Elizabeth Findley had commenced suit to recover this property. The Richmond & Danville, of course, took *lis pendens*, and any estoppel or prescription it might claim against either the estate of Elizabeth Findley, or her heirs at law, only ran to the time of the commencement of the ejectment suit. The Richmond & Danville Company sets up no separate or distinct right or equity as to itself. Nothing whatever has transpired between it and the estate or heirs at law of Elizabeth Findley; on the contrary, as I have stated, it took with a suit pending to recover this land. What then were the rights of the Atlanta & Charlotte Company? It could have set up everything as a defense that is contained in the bill filed by the Richmond & Danville Company, and it could have set it up, I think, by an equitable plea to the action of ejectment, or it might have filed its bill on the equitable side of the court, if it preferred. *Elder* v. *Allison*, 45 Ga. 14, 17.

It is stated in the bill and admitted in the answer that the estate of Elizabeth Findley owed no debts. That being true, the suit of the administrator was solely for the purpose of distribution, and was maintained by him simply for the use and benefit of the heirs at law. Why then could not any grounds of defense either of these companies had against the heirs at law have been made in an equitable defense to the action of ejectment, as it was their right by law to do? Although it appears that at the time that the Atlanta & Charlotte transferred its property to the Richmond & Danville Company, it had not made itself party formally to the action of ejectment; it was the real defendant, knew of the action, and was bound thereby. *Rodgers* v. *Bell*, 53 Ga. 94. And it is clear that the very same matters set up by the Richmond & Danville in this bill, would have been set up in some form by the Atlanta & Charlotte. The Atlanta & Charlotte, it is conceded, could not have removed this controversy in any shape to this court. The Richmond & Danville brought into a suit involving practically and really the same controversy made by this bill, after it commenced, and took whatever rights it acquired as to this property by the agreement of March, 1881, subject to the disabilities of the Atlanta & Charlotte Company. But it is stated by counsel for complainant that the case of *Bondurant* v. *Watson*, 103 U. S. 281 controls this case. I do not think so. That was a bill filed by Watson to protect himself against a judgment. The court say:

"The controversy in the original case between Walter E. Bondurant and Albert Bondurant *et al.*, had been ended by a final judgment. The case between Watson and Mrs. Bondurant had its origin in that judgment, but it was a new and independent suit between other parties *and upon new issues.* It was a suit in which the plaintiff sought to be protected against a judgment to which he was not a party, by which his property had been specifically condemned to be sold to satisfy a claim against others and not against him."

The complainant in that case, it will be observed, had distinct rights which he claimed independently of those claimed by any party to the original litigation. The original case had gone to judgment. He sought to be protected against the judgment on account of rights he had that were in no way involved in the controversy between the parties to the original suit.

Here the complainant acquires the control of property, to recover which a suit is pending, and then instead of defending that suit, sets up by bill in equity the same matters he could have pleaded in the original case, and claims the right to remove the case to this court when it could not have been removed by the party from whom he acquired his rights. I do not think he can do so. If the effect of the agreement of March 26, 1881, between these two companies is to unite the management of the companies, it seems to me the argument against removal would be stronger. *Crump* v. *Thurber*, 115 U. S. 56, 5 Sup. Ct. Rep. 1154, and cases cited. Under the fifth section of the act of March 3, 1875, if the court believes the case to have been improperly removed, it should proceed no further, but should remand it to the state court.

Believing this case to have been improperly removed to this court, I must direct that it be remanded to the state court, and an order will be passed accordingly.