### BURNHAM et al. v. FIRST NAT. BANK OF LEOTI.

(Circuit Court of Appeals, Eighth Circuit. November 14, 1892.)

No. 124.

1. REMOVAL OF CAUSES—CITIZENS OF DIFFERENT STATES—SUBSTITUTED PARTIES.

Where replevin is brought in a state court by a citizen of the state against the sheriff of a county therein to recover goods levied on by writ of attachment, and the plaintiffs in the attachment are substituted for the sheriff as defendants, they, although citizens of another state, are not entitled to remove the action of replevin to a circuit court of the United States, as the original defendant had no such right.

2. SAME—COMITY BETWEEN FEDERAL AND STATE COURTS.

Query, whether, on the ground of comity, a United States court should not refuse to take jurisdiction by removal of such action.

3. SAME—TIME OF APPLICATION.

Under Act Aug. 13, 1888, § 3, (25 St. p. 433,) requiring the application for the removal of a cause from a state court on the ground of diverse citizenship to be filed in the state court not later than the time within which, by the state statutes, the defendant is required to plead, a petition for such removal from a court of the state of Kansas, filed 75 days after the summons was made returnable, is too late; Gen. St. Kan. 1889, requiring a declaration to be answered within 20 days from the day the summons is made returnable.

In Error to the Circuit Court of the United States for the District of Kansas.

Action of replevin brought by the First National Bank of Leoti, Kan., in a district court of the state of Kansas, against William P. Brown, sheriff, for whom James K. Burnham, Thomas K. Hanna, Albert Munger, Fred. C. Stoepel, and Oscar L. Woodgate were substituted as defendants. On petition of the defendants so substituted the case was removed to the United States circuit court. Verdict and judgment for plaintiff. Defendants bring error. Reversed.

T. F. Garver and T. L. Bond, for plaintiffs in error.

E. C. Little, (Little & Hardesty, on the brief,) for defendant in error.

Before CALDWELL and SANBORN, Circuit Judges, and SHIRAS, District Judge.

SHIRAS, District Judge. On the 26th of November, 1889, the First N: nal Bank of Leoti, Kan., brought this action in replevin in the district court of Wichita county, Kan., against W. P. Brown, the sheriff of that county, for the recovery of a stock of goods previously levied on by writ of attachment, issued in a suit brought by the firm of Burnham, Hanna, Munger & Co. against S. C. Haines. The summons issued and served in the replevin action was returnable December 26th. On the 19th of December the defendant Brown appeared, and filed a motion asking the court to grant an order substituting in his stead as defendants in said action, James K. Burnham, Thomas K. Hanna, Albert H. Munger, Fred. C. Stoepel, and Oscar L. Woodgate, partners in business under the firm name of Burnham, Hanna, Munger & Co., on the ground that he, the said Brown, had no personal interest in the matter in controversy, being interested only in his official capacity as sheriff of said Wichita county, and that the parties above named were the plaintiffs in the suit wherein the writ of attachment had been issued upon which the goods in controversy had been seized. On the 11th day of March, 1890, this motion for an order of substitution came up for hearing before the district court of Wichita county, and the motion was granted; and thereupon said Burnham, Hanna, Munger, Stoepel, and Woodgate entered their appearance in said case, and by order of the court were substituted as defendants therein in place of the original defendant, W. P. Brown. On the same day, to wit, March 11, 1890, the parties thus substituted as defendants filed a petition for the removal of the case into the United States circuit court for the district of Kansas on the ground of diverse citizenship, it being averred that the First National Bank was, when the action was brought, and continued to be, a citizen of the state of Kansas, in that it was a corporation created under the statutes of the United States, and authorized to carry on business in said state, and that the defendants Burnham, Hanna, Munger, and Woodgate were, when the suit was brought, and still are, citizens of Missouri, and the defendant Stoepel was and is a citizen of Michigan, and that the amount involved was in excess of $2,000, exclusive of interest and costs. The state court granted an order of removal, and thereupon a transcript of the record was filed in the United States circuit court at Topeka, Kan., and subsequently a trial was had before the court and jury upon the merits, and a judgment was ordered and entered in favor of the plaintiff below, to reverse which the case has been brought before this court upon writ of error, the errors assigned presenting questions arising upon the rulings of the court in the rejection or admission of evidence, and in directing the jury to return a verdict for the plaintiff below. It does not appear from the record that any question was made in the circuit

court as to the jurisdiction of that court over the case, nor has such question been suggested by counsel in the submission of the case to this court, yet the facts stated by counsel in their briefs so plainly indicated a lack of jurisdiction that we have been obliged, under the well-settled rule established by the supreme court, to look into the transcript, to see whether, under any view of the facts, the jurisdiction of the circuit court could be sustained.

It is said by the supreme court in Railway Co. v. Swan, 111 U. S. 379-383, 4 Sup. Ct. Rep. 510, that—

"The rule, springing from the nature and limits of the judicial power of the United States, is inflexible and without exception, which requires this court, of its own motion, to deny its own jurisdiction, and, in the exercise of its appellate power, that of all other courts of the United States, in all cases where such jurisdiction does not affirmatively appear in the record on which, in the exercise of that power, it is called to act. On every writ of error or appeal the first and fundamental question is that of jurisdiction, first of this court, and then of the court from which the record comes. This question the court is bound to ask and answer for itself, even when not otherwise suggested, and without respect to the relation of the parties to it. * * * The reason of the rule and the necessity for its application are stronger and more obvious when, as in the present case, the failure of the jurisdiction of the circuit court arises, not merely because the record omits the averments necessary to its existence, but because it recites facts which contradict it."

What, then, does the record in this cause show on the question of the jurisdiction of the circuit court?

We note, but do not consider nor determine, the question whether, under the rule laid down in Buck v. Colbath, 3 Wall. 324, and other like cases, the circuit court should not have refused to entertain jurisdiction of this case on removal on the ground that, being an action in replevin, brought originally to retake from the officer of the state court property by him held under a writ of attachment issued from the state court, the comity existing between courts created by different sovereignties did not demand that the United States circuit court should refuse to take jurisdiction by removal of an action which it would not have entertained if brought in that court by original proceedings.

Passing this question, and assuming, for the purposes of this case, that the form and object of the action did not create an insuperable barrier to the exercise of jurisdiction on part of the circuit court, the query is whether the record shows that it was a case removable by reason of the diverse citizenship of the parties, which was the ground relied on in the petition for removal. It is well settled that the diversity of citizenship between the litigants must exist at the time of the commencement of the action, as well as at the time when the application for removal is made. Gibson v. Bruce, 108 U. S. 561, 2 Sup. Ct. Rep. 873; Akers v. Akers, 117 U. S. 197, 6 Sup. Ct. Rep. 669; Stevens v. Nichols, 130 U. S. 230, 9 Sup. Ct. Rep. 518. The record of the case at bar shows that when this action was commenced the parties plaintiff and defendant were citizens of the same state. Under the provisions of the act of August 13, 1888, national banks are deemed to be, for jurisdictional purposes, citizens of the state wherein they are located, and they no longer possess the right of removal on the ground that they are federal corporations. Petri

v. Bank, 142 U. S. 644, 12 Sup. Ct. Rep. 325. The First National Bank of Leoti, the plaintiff below, was therefore, when the action was commenced, a citizen of the state of Kansas, as was also the defendant, W. P. Brown, the sheriff of Wichita county, in said state. . Clearly, therefore, when the action was brought, it was a suit pending between citizens of the same state, and, as the record then was, it could not be removed into the ˄ ˄deral court. In the petition for removal it was averred that at the time the suit was commenced the individual members of the firm of Burnham, Hanna, Munger & Co. were citizens of states other than Kansas, and the right of removal seems to have been rested on the theory that it was the citizenship of the substituted defendants that determined whether the case was or not removable.

Under the ruling of the supreme court in Pirie v. Tvedt, 115 U. S. 41, 5 Sup. Ct. Rep. 1034, 1161; Sloane v. Anderson, 117 U. S. 275, 6 Sup. Ct. Rep. 730; Phelps v. Oaks, 117 U. S. 236, 6 Sup. Ct. Rep. 714; and Hedge Co. v. Fuller, 122 U. S. 535, 7 Sup. Ct. Rep. 1265,— the sheriff, so long as he was a party to the action, could not be regarded as a nominal party therein. He was, when the suit was brought, the sole defendant, and was liable in the first instance to the plaintiff for all damages and costs recoverable in the action in case it was adjudged that the right to the possession of the property belonged to the plaintiff below. His position was not that of a nominal party, but he was, in fact, the sole and actual defendant, and the action was one between citizens of the same state, and therefore, when the suit was brought, the condition of adverse citizenship necessary to create the right of removal did not exist. The substitution of other parties for the original defendant did not change the character of the action in this particular. After the substitution had taken effect it was still true that when the action was commenced the parties thereto were citizens of the same state, and the essential element of diversity of citizenship at the time of the institution of the suit was still lacking. It is well settled that, as regards the right of removal, substituted parties have no other nor greater rights than the party in whose stead they are substituted. Thus, in Cable v. Ellis, 110 U. S. 389–398, 4 Sup. Ct. Rep. 85, it is said:

"He took his place by intervention in the suit, subject to all the disabilities that rested at the time on the party in whose stead he is to act. If his application to have his rights in respect to the improvements he has put on the property settled in this suit can be entertained at all, it will be only as an incident to the original controversy, and whatever would bar a removal of suit before he intervened will bar him afterwards, even though by his intervention he may have raised a separate controversy."

In Railway Co. v. Shirley, 111 U. S. 358–361, 4 Sup. Ct. Rep. 472, it is said:

"In Gibson v. Bruce, 108 U. S. 561, 2 Sup. Ct. Rep. 873, it was decided that under the act of March 3, 1875, (chapter 137,) a suit could not be removed on the ground of citizenship, unless the requisite citizenship existed, both when the suit was begun and when the petition for removal was filed; and in Cable v. Ellis, 110 U. S. 389, 4 Sup. Ct. Rep. 85, that a substituted party comes into a suit subject to all the disabilities of him whose place he takes, so far as the right of removal is concerned."

Under the doctrine of these cases, parties who come into the case as substitutes for one or the other of the original parties thereto cannot exercise the right of removal if such right did not exist in favor of the party in whose stead they are substituted; and, as the record clearly shows that the original defendant in this action never possessed the right of removal, it follows that the present defendants, as substitutes taking his place, did not have the right to remove the case.

Furthermore it is equally well settled that if a right of removal has once existed, but has been terminated by lapse of time, or by a failure to exercise the right within the time limited by the statute, it cannot be availed of by one who causes himself to be associated with or substituted for the defendant, against whom the bar of time has taken effect. Railway Co. v. Shirley, 111 U. S. 358, 4 Sup. Ct. Rep. 472; Fletcher v. Hamlet, 116 U. S. 408, 6 Sup. Ct. Rep. 426. By the provisions of section 3 of the act of August 13, 1888, it is required that the application for the removal of a cause on the ground of diverse citizenship must be filed in the state court not later than the time when, under the statutes of the state or the rules of the court, the defendant is required to answer or plead to the declaration. By section 4188 of the General Statutes of Kansas, compiled in 1889, and in force when this action was brought, the defendant in this action was required to answer the declaration within 20 days from the day when the summons was made returnable, which was on the 26th of December, 1889, and therefore the time within which a petition for the removal of the cause could be properly filed would terminate in 20 days from that date, whereas in fact it was not filed until March 11, 1890. The application was, therefore, not within the time limited by the statute, and for that reason the case was not one of which the United States circuit court could rightfully take jurisdiction. Railroad Co. v. Daughtry, 138 U. S. 298, 11 Sup. Ct. Rep. 306.

As it thus clearly appears on the face of this record that the circuit court did not have jurisdiction of this case, we are precluded from considering the questions discussed in the briefs of counsel, and must reverse the judgment of the circuit court for want of jurisdiction; thus holding for naught all that was done in that court,—a result which should impress upon the trial courts, as well as upon counsel interested in cases sought to be brought therein, either originally or by removal, the need that exists for ascertaining in every case that jurisdiction in fact exists, and is made to appear affirmatively on the record, before the litigants are subjected to the delay and expense caused by a trial on the merits, followed by a reversal of the judgment for want of jurisdiction. The judgment is therefore reversed, and the circuit court is directed to remand the case to the state court for want of jurisdiction; the plaintiffs in error to pay the costs in the circuit court and in this court.