## WETHERBY v. STINSON et al.

(Circuit Court of Appeals, Seventh Circuit.   April 13, 1894.)

### No. 142.

1. JURISDICTION OF FEDERAL COURTS—CITIZENSHIP.
    Where jurisdiction depends on diversity of citizenship, and the bill shows that complainant and one of the defendants are citizens of the same state, and such defendant, although he files a disclaimer, is not dismissed out of the case, the suit should be dismissed.
2. REVIEW ON APPEAL—OBJECTION NOT RAISED BY COUNSEL.
    On appeal from a decree dismissing a suit for want of equity the appellate court should take notice of a lack of jurisdiction, appearing from the bill, even though it is not suggested in the briefs or at the hearing.

Appeal from the Circuit Court of the United States for the Western District of Wisconsin.

This was a suit by George Wetherby against James Stinson, the Superior Consolidated Land Company, Sarah B. Anderson, and Daniel A. Robertson.    Defendant Robertson filed a disclaimer, and the other defendants demurred.    The demurrer was sustained, and the bill was dismissed for want of equity.    Complainant appealed.

The appellant, a citizen of Minnesota, brought his bill of complaint against the defendants, alleging that three of them were residents and citizens respectively of Illinois or Wisconsin, and the fourth, Daniel A. Robertson, a resident and citizen of Minnesota.    The averments of the bill are, in substance: That Lafayette Emmett, the appellant's grantor, being the owner of the northeast quarter of a certain section of land in Douglas county, Wis., entered into an agreement with a syndicate, consisting at first of eleven and afterwards of twelve persons, for the conveyance of the land to a trustee, to be platted in connection with lands belonging to the members of the syndicate as the city of Superior; that in pursuance of that agreement, on the 29th of June, 1854, he joined in the execution of a deed conveying the land to the said Robertson as trustee "for the purpose of platting as aforesaid and not otherwise," and for no other consideration; that in August, 1854, the twelfth person joined the syndicate, and all authority theretofore given Robertson by the

original eleven, of whom he was one, was revoked, and Newton and Nelson, who were also members, were selected as, and by deed in writing were made, trustees and attorneys in fact of the twelve, in lieu of Robertson, to apportion among the several members of the syndicate, and to convey to them, their respective shares in the platted lands; that on December 16th Robertson executed to his principals, the original eleven, a formal release and conveyance of all lands conveyed to him, including the said quarter section; that after August, 1854, the proposed platting was done, and made a matter of record; that there exists, and has ever existed, on the records of Douglas county, evidence of the original agreement among the members of the syndicate of eleven, and of the annulment thereof, and of the revocation of the trusteeship and authority of Robertson, and of the subsequent agreement among the twelve who composed the second syndicate; that at the request of the original syndicate Emmett executed "his certain formal deed for the south half of said northeast quarter to said twelve persons, respectively, in pursuance of, and in modification of, the original agreement for the platting of said northeast quarter, which deed bears date November 24, 1854, and was duly recorded," as were all the deeds before mentioned; that thereafter, on June 18, 1857, pursuant to the original and modified agreements, the twelve, in compliance with the original agreement between Emmett and the eleven, and after the plat of Superior was made and recorded, did execute to Emmett, by and through Newton and Nelson, as attorneys in fact, a reconveyance of all the blocks in and according to the plat of Superior upon the south half of the said southeast quarter, which deed was recorded March 26, 1858; that Robertson never made any conveyance of the north half of said northeast quarter, or of any part thereof, save and except to said eleven persons as aforesaid; and that since the formation of the new syndicate, and the designation of Newton and Nelson as trustees, and the revocation of his own powers, "Robertson has ever treated and regarded said powers conferred upon him by and under said agreement with said Lafayette Emmett, as aforesaid, as fully terminated, and absolutely revoked, and of no further life, force, or effect;" that upon a judgment for costs in the sum of $213.67 against the twelve composing the new syndicate, rendered in a certain suit begun by them in the Douglas circuit court, and dismissed on their motion, execution was issued and levied upon certain lands as the property of the twelve, including a part of the north half of said northeast quarter, and thereafter a sale and pretended conveyance was made by the sheriff to E. W. Anderson, Jr., for $36.75, the deed bearing date February 3, 1871; that on June 30, 1868, a pluries execution issued, by virtue of which the sheriff levied upon and sold other lands as the property of the twelve, including the remainder of the north half of said northeast quarter, to the respondent James Stinson, one of the twelve judgment debtors, for $240; that no redemption was made from either of the sales; that on April 20, 1875, said Anderson died, leaving the respondent Sarah B. Anderson his sole devisee, and she makes claim to the portion of the land so sold and conveyed to her devisor; that Stinson is, and ever has been, a large stockholder in the Consolidated Land Company, one of the respondents, and, solely in consideration of stock in that company, has within the past two years made pretended assignments and conveyances to that company of a portion of the north half of said northeast quarter, purchased at sheriff's sale as aforesaid; that the said north half of the said quarter section has ever been, and now is, wholly vacant and unoccupied, and is of the value of $3,000; that the twelve judgment debtors aforesaid never, either jointly or severally or otherwise, had in said land, or any part thereof, any property or rights, legal or equitable, leviable under execution; that the deed of Emmett to Robertson conveyed no leviable interest or property in the land; that Stinson, as one of the judgment debtors, was primarily and at all times absolutely liable individually for the payment of the said judgment, and, well knowing the fraudulent character of the sheriff's sale, made no attempt to obtain a deed thereunder until more than 21 years after the date of the sale, when, on March 10, 1890, without any order of court therefor, he fraudulently and unlawfully received from the sheriff of the county a deed which was filed for record four days later by said corporation, which at all times had full notice, both actual and constructive, of the infirm and worthless character of Stin-

son's title; that the pretended transfers to the corporation by Stinson were the result of a conspiracy and fraudulent combinations between the corporation and him to harass the complainant, and to becloud and depreciate the value of his title; that 'immediately after the platting of the land—for which Emmett paid his proportionate share of the expense—Emmett demanded of Robertson a formal conveyance of the platted blocks in the north half of the said quarter section, which he neglected and refused to make; that Emmett made like demand of the syndicate of twelve after the pretended conveyance by Robertson to the original eleven, and before the pretended sheriff's sales, which demand was neglected and refused; that the defendants, and each of them, neglect and refuse to release and discharge of record or to surrender to the plaintiff their pretended and ostensible claims of record to said north half of the said northeast quarter section, and to any part thereof; that Emmett, "for full value paid to him," sold and conveyed the north half of said premises to the plaintiff by deed, which was afterwards duly recorded on the 23d of January, 1890; that the claims and acts of the respondents Stinson, the Consolidated Land Company, Sarah B. Anderson, and Daniel A. Robertson are contrary to equity, and constitute unjust clouds upon the complainant's title; that neither the complainant nor his grantor, Emmett, had notice or knowledge of the sales made by the sheriff, or either of them, and of the claims of the defendants thereunder, until within the past one and one-half years. The prayer of the bill, among other things, is "that the said instrument to Daniel A. Robertson be decreed an unexecuted trust as against your orator, and that no property, in fact or in law, ever passed to any one by virtue thereof, and that legal title to said premises be decreed conveyed to your orators."

To this bill Robertson, by counsel, filed a disclaimer, which, omitting signatures, was of the following tenor: "This defendant now and at all times hereafter saving and reserving unto himself all benefit and advantages of exception which can or may be had or taken to the many errors, uncertainties and other imperfections in the said complainant's bill of complaint contained, for disclaimer thereunto, or unto so much, or such parts thereof, as this defendant is advised is or are material or necessary for him to make disclaimer unto, this defendant, disclaiming, saith that he doth not know that he, this defendant, to his knowledge and belief, ever had, nor did he claim or pretend to have, nor doth he now claim, any right, title, or interest of, in, or to the estates and premises situate," etc., "in the said complainant's bill mentioned, and every part thereof. And this defendant denies all, and all manner of, unlawful combination and confederacy, wherewith he is by the said bill charged; without this that there is any other matter, cause, or thing in the said complainant's said bill of complaint contained material or necessary for this defendant to make answer unto, and not herein and hereby well and sufficiently answered, traversed, and avoided or denied, is true to the knowledge or belief of this defendant. All of which matters and things this defendant is ready and willing to aver, maintain, and prove, as this honorable court shall direct, and humbly prays to be hence dismissed, with his reasonable costs and charges in this behalf most wrongfully sustained."

The other defendants demurred to the bill. This was in March, 1892, and on the 15th of August, 1893, at a special term, the court sustained the demurrer, ordered the bill dismissed as without equity, and adjudged that the defendants, including Robertson, recover of the complainant their costs. Appeal was prayed "from said final decree, and the whole thereof," Robertson's name being included with the others in the petition for appeal and assignment of errors.

J. N. True, for appellant.

A. L. Sanborn, for appellees.

Before WOODS and JENKINS, Circuit Judges, and BAKER, District Judge.

WOODS, Circuit Judge (after stating the case). The bill shows that when the suit was begun the complainant and Robertson, one

'of the respondents, were citizens of the same state, and, though not suggested in the briefs or at the hearing, we are compelled to recognize the lack of federal jurisdiction over the case. Railway Co. v. Swan, 111 U. S. 379, 382, 4 Sup. Ct. 510; Parker v. Ormsby, 141 U. S. 81, 11 Sup. Ct. 912; Burnham v. Bank, 10 U. S. App. 485, 3 C. C. A. 486, 53 Fed. 163. Robertson's disclaimer did not cure the defect, because, if for no other reason, he was not dismissed out of the case, but remained a party to the end. Pirie v. Tvedt, 115 U. S. 41, 5 Sup. Ct. 1034, 1161; Sloane v. Anderson, 117 U. S. 275, 6 Sup. Ct. 730; Phelps v. Oaks, 117 U. S. 236, 6 Sup. Ct. 714; Wire Hedge Co. v. Fuller, 122 U. S. 535, 7 Sup. Ct. 1265; Torrence v. Shedd, 144 U. S. 527, 12 Sup. Ct. 726. In fact, his disclaimer was not to the entire bill, but was accompanied by a denial of the alleged confederacy and combination, and therefore did not entitle him to be dismissed with costs. Story, Eq. Pl. § 844; 1 Daniell, Ch. Pl. 707. "The proper course to be pursued by the plaintiff," says Daniell, at page 709, "after a disclaimer to the whole bill has been filed, is either to dismiss the bill as against the party disclaiming, with costs, or to amend it; or, if he thinks the defendant is not entitled to his costs, he may set the cause down upon the answer and disclaimer, and bring the defendant to a hearing." It does not follow, therefore, from the mere filing of a disclaimer, no matter what its scope, or what the nature of the case, that the one disclaiming ceases to be a party, though, if he be charged only with asserting a claim, he may, by disclaiming, become entitled ordinarily to be dismissed with costs. It is seldom, however, that a disclaimer may be put in alone or without answer, and in this case, irrespective of conspiracy and combination, of which Robertson was not directly charged, it is doubtful whether a disclaimer was appropriate or admissible. The bill shows that Emmett had conveyed the land in controversy to Robertson in trust, to be platted by him, and that Robertson conveyed or attempted to convey to the eleven persons who composed the original syndicate. These facts involve important questions, which, it would seem, cannot well be determined in a suit to which Robertson is not a party. For instance: Did Emmett part with his title, or did he confer upon Robertson simply a power to do the platting contemplated? And, when that was done, did the conveyance or deed cease to be of effect, or was it necessary that there should be a reconveyance to Emmett? Whatever the right, title, or power conferred upon Robertson, could he make a transfer to others, and was his deed to the eleven totally void, or did it vest the grantees with some right, title, or power? If the title remained in Robertson, it is doubtful whether, by a disclaimer, especially when signed, as this was, only by his counsel, he could divest himself of the title. To say the least, it was important, as the plaintiff recognized it to be, that Robertson should be made a party to the case, and, notwithstanding the disclaimer, it was hardly less important that until final decree was rendered he should remain a party. No motion or order for his discharge was made, and he in fact continued in the case to the end, and, with the other defendants, was given judgment for costs. Whether or not, even if the disclaimer had been complete

and appropriate to the entire bill, and the party had been dismissed from the case, the jurisdiction would have been thereby established or acquired, we need not consider. Upon the facts as they are, the lack of jurisdiction is clear, and it follows that the decree dismissing the bill for want of equity should be set aside, and a dismissal for want of jurisdiction should be entered, but without costs. Mayor v. Cooper, 6 Wall. 247; Barney v. Baltimore City, Id. 280; Hornthall v. Collector, 9 Wall. 560; Railway Co. v. Swan, supra; Grace v. Insurance Co., 109 U. S. 278, 3 Sup. Ct. 207; Fuel Co. v. Brock, 139 U. S. 216, 11 Sup. Ct. 523. We think, too, that costs should not be allowed in this court. So ordered.