FARMERS' & MERCHANTS' NAT. BANK OF WACO v. SCHUSTER et al.

(Circuit Court of Appeals, Fifth Circuit. March 1, 1898.)

No. 629.

1. REMOVAL OF CAUSES—LOCAL PREJUDICE.

After a cause has been tried in a state court, and a mistrial entered, it cannot be removed on account of local prejudice.

2. SAME—DIVERSE CITIZENSHIP.

Where an action in trespass to try the title to land has been tried in a state court, and a mistrial entered, a person becoming interested in the land in controversy, and intervening as a defendant, cannot have the cause removed to the federal court on account of diverse citizenship.

Appeal from the Circuit Court of the United States for the Northern District of Texas.

John W. Davis, for appellant.
D. T. Bomar, for appellees.

Before McCORMICK, Circuit Judge, and NEWMAN and PARLANGE, District Judges.

NEWMAN, District Judge. The facts in this case, necessary to an understanding of the issues involved, are as follows: A suit, being a trespass to try title to land under the Texas statute, was filed in the district court of McLennan county, on the 17th day of February, 1894, in favor of the Farmers' & Merchants' National Bank of Waco against A. N. Schuster et al. On July 2, 1895, the plaintiff filed its first amended original petition, which petition was trespass to try title to about 20,000 acres of land lying in Sterling county, Tex., the defendants being A. N. Schuster and wife, Mrs. Lucretia Schuster, A. Judson Cole and wife, Luda Cole, Mrs. Florence King, August Schuster, and D. T. Bomar, all of whom resided in the state of Missouri, except defendant Bomar, who resided and resides in the state of Texas. The petition showed the levy, in favor of the bank on the 26th of February, 1894, of a writ of attachment on the land sued for as the property of August Schuster, issuing out of the district court of McLennan county, Tex.; a judgment in said cause foreclosing its attachment lien; an order of sale under said judgment, and purchase by petitioner, with sheriff's deed to the land. The petition also alleged that on the 5th day of December, 1893, August and A. N. Schuster, for the purpose of hindering, delaying, and defrauding their creditors, conveyed part of said land to A. Judson Cole, trustee for Mrs. Lucretia Schuster; that on the same day said August Schuster, with intent to hinder, delay, and defraud his creditors, conveyed all of the remainder of said land except six sections to A. N. Schuster, his co-defendant; that on the 8th day of May, 1894, A. N. Schuster conveyed all the land conveyed to him by August Schuster to D. T. Bomar, as trustee, for the benefit of Mrs. Luda Cole and Mrs. Florence King in the first class, and for the benefit of about 60 other parties, scattered all over the United States, in the second class, said trust deed directing said Bomar to take charge of said property, manage and dispose of the same, and pay

86 F.—11

the proceeds of the sale to the parties secured in said trust deed; that on the 29th of October, 1894, A. N. Schuster, joined by his wife and August Schuster, conveyed to D. T. Bomar, trustee, all the land sued for, to secure certain parties named therein; and that by said last-named deed said Bomar is given possession of said property, rents and profits arising from the same, and is directed to sell the same, and pay the proceeds of the sale to the creditors secured by said deed. Fraud was alleged in all these conveyances, with the knowledge and participation on the part of grantees, and that said lands were the property of August Schuster at the date of the levy of the attachment on the same. Therefore petitioner claims title in fee simple in itself; that it is entitled to possession, and is deprived of possession by D. T. Bomar, who holds the same, and is receiving the rents; alleges the value of the rents; prays for title and possession of said land, that the fraudulent deeds be set aside, and that cloud be removed from the title. On August 1, 1895, A. Schuster filed his answer and disclaimer in the state court. On July 3, 1895, D. T. Bomar filed, in the state court, his petition and bond for removal to the United States court at Waco, on the ground that the substantial controversy in the suit was between citizens of different states; that he (Bomar) had no interest, and was only a formal or nominal party, being trustee in two certain deeds; that the beneficiaries in said trust deeds had petitioned for removal, etc. The other defendants, on July 30, 1895, filed their petition and bond for removal on the ground of diverse citizenship, alleging that defendant Bomar had no substantial interest in the controversy, being trustee, and only formal or nominal party, and filed with their petition copies of trust deeds under which Bomar held the land. On July 3, 1895, all the defendants filed their joint answer with exceptions, special and general, filing therewith certified copies of said trust deeds as exhibits. On motion, in the United States court, on November 18, 1895, the cause was remanded to the state court from which it was removed. After the cause was remanded to the state court, and additional pleadings were filed by both plaintiff and defendants, on the 18th day of January, 1897, the case came on for trial, resulting in a mistrial, there being a hung jury. On the 5th of March, 1897, the bank filed its second amended original petition in the state court in lieu of its petition filed in November, 1894, and of its first amended original petition, filed in July, 1895, against the same defendants, and alleging, in addition to the facts contained in its original petition, that in October, 1896, Bomar, trustee, had conveyed part of said property to W. T. Fenton, of Chicago, Ill., and another part of said property to Joshua Graham, and by petition making Fenton and Graham parties for the first time to the suit, also alleging that Fenton and Graham had actual knowledge of the pendency of the suit and of the issues involved in the suit, at and before the date of their purchase, and constructive notice of the plaintiff's title by reason of the registration of said attachment writs and sheriff's deed; and praying for title and possession of land, and for rents. On the 11th of March, 1897, Mrs. Lucretia Schuster filed her petition for certiorari to remove this cause from the state court to the United States court for the Northern district of Texas, in which petition she sets up a history of

the case, alleges that there is a separate controversy as between plaintiff and defendant Fenton, that she only owns and claims 3,200 acres of land, which lands are also claimed by her co-defendant Joshua Graham; that as to the rest of the land there is a controversy solely between the plaintiff and Joshua Graham; that all of the defendants except herself, Fenton, and Graham have filed disclaimers, and have no interest in the controversy; that Bomar was never a necessary party to the suit, having no interest therein; alleging also that from prejudice and local influence she would not be able to obtain justice in the state court, or any other court to which, under the law of Texas, she would have the right to remove said case on account of such prejudice and local influence. The reasons afterwards set out in the petition for the prejudice and local influence were the unpopularity of A. and A. N. Schuster, and the fact that the Farmers' & Merchants' Bank of Waco has extensive connections in Waco, and that prominent citizens are its officers. The petition was sworn to by Mrs. Schuster, accompanied by an affidavit by D. T. Bomar, very much on the same line as that of Mrs. Schuster. This application for removal was presented to the district judge holding the circuit court for the Northern district of Texas on the 18th of March, 1897, and granted. On March 16, 1897, D. T. Bomar filed a disclaimer, alleging that he had never had any interest in the subject-matter of the suit, that he was trustee in two deeds of trust described in the record, and that both of said deeds of trust had been foreclosed, and the property conveyed thereby sold to William T. Fenton and Joshua Graham; that Fenton and Graham, having been made parties thereto, would answer, setting up their rights in the premises, and that Bomar was no longer a necessary party. On March 27, 1897, Fenton and Graham filed their answer to the second amended original petition of plaintiff, in which they demurred generally, and pleaded not guilty. On the 27th of March, 1897, Fenton and Graham each filed their petition and bond for removal of the case from the state court to the United States court, on the ground that it was a controversy wholly between citizens of different states, setting out the nature of the controversy, their purchase from Bomar, trustee, under foreclosure of trust deed, that Bomar never was a necessary party to the suit, and had parted with all right or interest that he might or could have had in the said premises, and that said Bomar had filed a disclaimer herein disclaiming all interest whatever in said premises. On the same day the case was removed to the United States court for the Northern district of Texas. On the 13th of April, 1897, the bank filed its motion in the circuit court to remand the case to the state court from which it had been removed, on the ground that the United States court was without jurisdiction to hear and determine the case. On the 20th of April, 1897, the motion to remand was denied. Subsequently the case, having been docketed on the equity side of the court, was transferred to the law side, and then afterwards transferred back to the equity side of the court. Thereafter an issue out of chancery was submitted to a jury. The verdict and decree entered thereon was partly in favor of the bank and partly against it. It was dissatisfied with the same, and, after the court had overruled its motion to set aside the verdict, and after

the court had overruled another motion to remand the cause, entered its appeal, and brought the case to this court. It appears from a stipulation that on March 3, 1897, the parties in the case agreed, in order to facilitate the litigation, that certain suits which had been instituted by Fenton and Graham in the circuit court should be dismissed, and that they should be made parties defendant to this suit, which was subsequently done. It was also agreed that Mrs. Schuster might file her application for removal, but the plaintiff reserved its right to object to the jurisdiction of the circuit court, and to endeavor to remand the case if it should be removed. We do not see that this stipulation affects the questions presented here for determination in any way, certainly not favorably to the appellees.

The first question to be determined in this case is that of the jurisdiction of the circuit court, and that depends upon whether or not the case was properly removed from the state court. It will be seen from the foregoing summary of the proceedings that the case, as it stood in the circuit court when it was tried and determined, was there by reason of two removals. One of these removals was by Mrs. Lucretia Schuster on the ground of prejudice and local influence, and the other by Fenton and Graham on the ground of diverse citizenship. We will first consider the removal of Mrs. Schuster. The petition for removal was presented and the removal allowed, it will be perceived, after the case had been tried, and mistrial entered, in the state court. The question as to the stage at which a case may be removed from a state court to the circuit court of the United States under the local prejudice clause of the act of March 3, 1887, seems to have been fully settled by the supreme court in Fisk v. Henarie, 142 U. S. 459, 12 Sup. Ct. 207, in which case the language "at any time before the trial thereof" was construed, and its meaning settled. The following quotation from the opinion by the chief justice will show more clearly what the court did decide:

"The act of March 3, 1887, c. 373 (24 Stat. 552), and also as corrected by the act of August 13, 1888, c. 866 (25 Stat. 433, 435), provided that 'any defendant, being such citizen of another state, may remove such suit into the circuit court of the United States for the proper district, at any time before the trial thereof, when it shall be made to appear to the said circuit court that from prejudice or local influence he will not be able to obtain justice in such state court, or any other state court to which the said defendant may, under the laws of the state, have the right, on account of such prejudice and local influence, to remove said cause.' In view of the repeated decisions of this court in exposition of the acts of 1866, 1867, and 1875, it is not to be doubted that congress, recognizing the interpretation placed on the word 'final' in the connection in which it was used in the prior acts, and the settled construction of the act of 1875, deliberately changed the language, 'at any time before the final hearing or trial of the suit,' or 'at any time before the trial or final hearing of the cause,' to read, 'at any time before the trial thereof,' as in the act of 1875, which required the petition to be filed before or at the time at which the cause could first be tried, and before the trial thereof. The attempt was manifestly to restrain the volume of litigation pouring into the federal courts, and to return to the standard of the judiciary act, and to effect this in part by resorting to the language used in the act of 1875, as its meaning had been determined by judicial interpretation. This is the more obvious in view of the fact that the act of March 3, 1887, was evidently intended to restrict the jurisdiction of the circuit courts, as we have heretofore held. Smith v. Lyon, 133 U. S. 315, 10 Sup. Ct. 303; In re Pennsylvania Co., 137 U. S. 451, 11 Sup. Ct. 141."

Justice Field and Justice Harlan dissented, but the foregoing extract is from the decision of the majority of the court.    According to this decision, the case having been once tried in the state court, it was improperly removed on Mrs. Schuster's petition, and it is unnecessary to go into the sufficiency of the facts alleged to show prejudice and local influence or the other questions raised in the case.

The other removal from the state court to the federal court was by Fenton and Graham on the ground of diverse citizenship.    Fenton and Graham bought from Bomar long after the suit by the bank against Bomar and others had been filed, and pending the litigation. The suit was commenced on February 17, 1894, and the conveyances from Bomar, trustee, to Fenton and Graham, were made in October, 1896.    Under the authorities, they came into the litigation subject to the disabilities of those who were already parties to the suit.    Bomar was not only a party, but a necessary party, to the suit.    He was in possession of the land under a deed empowering him to sell the same, and make certain disposition of the proceeds.    Being in actual possession and control of the land, and collecting the rents, as stated, it seems clear that he is not only a proper, but a necessary, party in a suit by one asserting title and the right to possession of the land.    Bomar being a party to the suit, and a citizen and resident of Texas, and the bank being a Texas corporation, Fenton and Graham came into the case subject to the existing conditions, and to the then disabilities of the parties.    One of the conditions and disabilities then existing was that the case was not removable, on the ground of diverse citizenship, to the circuit court of the United States.    Bomar's disclaimer did not affect the status of the case in this respect.

In Cable v. Ellis, 110 U. S. 389, 4 Sup. Ct. 85, in which there was a similar question, the headnote to the decision is as follows:

"After a suit in equity involving title to real estate and priority of lien had long been pending in a state court, and the highest court in the state had decided some of the points in controversy, and had remanded the cause to the court below to have other issues determined, A. became interested in the property by grant from one of the parties to the suit, and intervened in it by leave of the state court to protect his rights at a time when the right of removing the cause from the state court to the federal court had expired as to all the parties. Held, that under the circumstances the intervention of A. was to be regarded as an incident to the original suit, and that he was subject to the disabilities resting on the party from whom he took title, and that, the time for removal having expired before he intervened, his right of removal was barred by that fact."

To the same effect, see Railway Co. v. Shirley, 111 U. S. 358, 4 Sup. Ct. 472.

In Jefferson v. Driver, 117 U. S. 272, 6 Sup. Ct. 729, the court, in the opinion, uses this language:

"As to the application of J. W. Jefferson for a removal under the act of 1875, the rule in Cable v. Ellis, 110 U. S. 389, 4 Sup. Ct. 85, applies.    He was brought into the suit as a purchaser pendente lite, and the relief asked against him is only an incident to the original controversy.    The proceeding is merely ancillary to the suit pending when he bought the property in dispute, and under which he got possession.    It is, in short, only a part of the machinery in the administration of the cause.    By purchasing pendente lite he connected himself with the suit, subject to the disabilities of the other parties in respect to a removal at the time he came in."

A similar question was before the circuit court for the Northern district of Georgia in Railroad Co. v. Findley, 32 Fed. 641, and the conclusion there reached was in line with the authorities above referred to which were cited and relied on to sustain the decision. See, also, Wagon Works v. Benedict, 14 C. C. A. 285, 67 Fed. 1, Burnham v. Bank, 3 C. C. A. 486, 53 Fed. 163, and Railway Co. v. Twitchell, 8 C. C. A. 237, 59 Fed. 727. If the decision of the court below was wrong in refusing to remand the case because Mrs. Schuster's removal was too late after a trial in the state court, and because Fenton and Graham could not remove on the ground of diverse citizenship, for the reasons hereinbefore stated, then the question of separable controversy discussed by counsel becomes immaterial. It may be proper to remark, however, that we do not understand any of the authorities construing the separable controversy clause of the act of March 3, 1887, to go to the extent that would make the controversy between Graham and the bank on the one hand and Fenton and the bank on the other hand separable controversies in the meaning of that act. It is a single suit by the bank against all of these defendants jointly, to recover the land in controversy, and we do not see in the case, or growing out of it, a separate controversy between either of the defendants and the plaintiff. The general aspect of this case as to the manner of its removal is not such as impresses us favorably. On the 5th of March, 1897, Fenton and Graham were made parties to this litigation. On the 16th of March thereafter Bomar filed his disclaimer, stating that he had only been holding under trust deeds, that he had sold the property to Fenton and Graham, and they would answer, setting up their rights in the premises. On the 27th of March thereafter Fenton and Graham, as has been stated, filed their petition and bond for removal. The courts will not be tenacious of jurisdiction attempted to be conferred upon them in this way. We are not to be understood as reflecting upon parties or counsel personally. We simply mean that in law the method employed cannot be allowed to avail to make a removable case. The stipulation between the parties, above referred to, instead of strengthening the case for the appellees, weakens it. Jurisdiction in the circuit court should grow out of the status of the parties to the cause which exists in due and regular course of the litigation, and not by the withdrawal of parties and the substitution of new parties, as seems to be true here, for the purpose only of making the case one cognizable in the circuit court. The conclusion from the foregoing is that this case was improperly removed to the circuit court, and for that reason the judgment of the court below is reversed, and the case remanded, with directions to the circuit court to remand the case to the state court from which it was removed.