BRADY *v.* THE MIAMI CONSERVANCY DISTRICT.

*Conservancy Act — Appeal from award by appraisers — Burden of proof on landowner, when.*

Upon the trial of an appeal under Section 6828-34, General Code, from the award of appraisers of a conservancy district, the burden of proof is on the landowner to show that the benefits assessed by the appraisers and confirmed by the court are excessive.

(Decided June 4, 1919.)

ERROR: Court of Appeals for Butler county.

*Mr. E. A. Belden* and *Messrs. Boyd & Burke,* for plaintiff in error.

*Mr. W. C. Shepherd; Mr. J. F. Neilan* and *Mr. B. F. Harwitz,* for defendant in error.

SHOHL, P. J. This is a proceeding in error by Patrick Brady against The Miami Conservancy District. In order to understand the case as a whole it will be necessary to recite certain matters of general public knowledge.

The Miami Conservancy District is a body corporate and a public subdivision of the state of Ohio, duly established and organized under what is known as the Conservancy Act of Ohio, enacted after the disastrous flood of 1913, being Sections 6828-1 to 6828-79, inclusive, of the General Code. Its general purpose was to prevent floods in the valley of the Miami river and its tributaries, and to protect life and property. The validity of the act has been determined by the supreme court of Ohio in *The County of Miami et al.* v. *The City of Dayton et al.,* 92 Ohio St., 215, and by the supreme court of the United States in *Orr* v. *Al-*

*len et al.,* 248 U. S., 35. The district was established and organized in June, 1915, by a decree of the common pleas court of Montgomery county, and embraces lands in the nine counties of Hamilton, Butler, Warren, Preble, Montgomery, Greene, Clark, Miami and Shelby.

In May, 1916, the board of directors of said district, as provided by law, duly adopted an official plan, which plan provided for the construction and maintenance of dams, retarding basins, levees and other works designed to accomplish the purpose for which the district was organized. Objections having been made thereto, the plan and the objections were duly submitted to said court, and on November 24, 1916, the objections were heard and overruled, and the plan was approved by the court, and thereby became and is now the official plan of said district. Pursuant to the act, three appraisers were appointed and qualified by said court, and on May 9, 1917, they filed their report, designated and referred to as the appraisal roll, showing therein, among other things, their appraisal of the value of the lands and certain interests in lands and other property required to be taken for the execution of said plan, and also their appraisal of the benefits to accrue from the execution of said official plan to the real estate which was owned by the plaintiff in error.

In accordance with the act, plaintiff in error filed exceptions to said appraisal of benefits, which said exceptions were heard and overruled by the court on July 30, 1917, and on that date the court modified and amended the appraisal, and, as so amended, approved and confirmed it, including

said appraisal of the benefits to accrue to the property of Patrick Brady. Patrick Brady thereupon perfected an appeal from said decree with respect to the amount of award of benefits assessed against his property, and gave bond as required by law. Thereafter, the court ordered the said Miami Conservancy District to file in the common pleas court of Butler county, in which the lands of Patrick Brady were located, a petition embodying the facts and the claim that the conservancy district made with respect to the said benefits, and this petition was filed. Patrick Brady filed an answer admitting the allegations of the petition, except that the assessment was made under a uniform rate, and averring that the benefits assessed against his property were excessive.

The case was tried to a jury and a verdict was rendered finding that the real estate of Patrick Brady would receive benefits from the execution of the official plan of the Miami Conservancy District in the amount shown by the appraisal roll, as set out in said petition. A motion for a new trial was overruled, and judgment was entered on the verdict, to which Brady now prosecutes error. His contentions are that there was error in the charge of the court to the jury that the burden of proof was on the landowner to show that the benefits assessed by the appraisers and confirmed by the court were excessive. He also charges as error that the court charged that the verdict required the concurrence of all twelve jurors to render a verdict.

Proceedings under the conservancy act differ from any other proceeding known to the Ohio law.

The act regulates proceedings in conservancy and nothing else, and its provisions are peculiar to the problems arising out of the flood situation and the relief to be provided for. In order to understand the nature of the so-called appeal thereby granted, an examination of the entire act is necessary, but we shall refer only to a few of the most important provisions. Section 26 provides:

"The court or judge shall appoint three appraisers * * * whose duty it shall be to appraise the land or other property within and without the district to be required for rights of way, reservoirs and other works of the district, and to appraise all *benefits* and damages accruing to all lands within or without the district by reason of the execution of the official plan."

This section also provides:

"Each of the appraisers shall, before taking up his duties, take and subscribe to an oath that he will faithfully and impartially discharge his duties as such appraiser, and that he will make a true report of such work done by him."

Section 27 provides:

"When the official plan is filed with the secretary of the district he shall at once notify the board of appraisers, and they shall thereupon proceed to appraise the benefits to all real property within or without the district, which will result from the organization of said district and the execution of the official plan."

Section 30 of said act provides:

"The board of appraisers shall prepare a report of its findings which shall be arranged in tabular form and bound in book form, and which shall be

known as the conservancy appraisal record. Such record shall contain the name of the owner of property appraised as it may appear on the tax duplicate or the deed records, a description of the property appraised, the *amount of benefits* appraised, the amount of damages appraised," etc.

Section 31 provides:

"Upon the filing of the report of the appraisers, the clerk of the court shall give notice thereof, as provided in this act, in each county in the district."

Section 32 provides:

"Any property owner may accept the appraisals in his favor of benefits and of damages * * * or may acquiesce in their failure to appraise damages in his favor, and· shall be construed to have done so unless he shall within ten days after the last publication provided for in the preceding section file exceptions to said report or to any appraisal of either benefits or damages., * * * All exceptions shall be heard by the court * * *. The court may, if it deem necessary, return the report to the board of appraisers for their further consideration and amendment," etc.

Section 33:

"If it appears to the satisfaction of the court after having heard and determined all said exceptions that the estimated cost of constructing the improvement contemplated is less than the benefits appraised, then the court shall approve and confirm said appraisers' report * * * and such findings and appraisals shall be final and incontestable."

Section 34:

"Any person, or public or private corporation desiring to appeal from an award as to compensa-

tion or damages or *benefits,* shall within ten days from the judgment of the court confirming the report of the appraisers, file with the clerk of the court a written notice making demand for a jury trial. He shall at the same time file a bond with good and sufficient security to be approved by the clerk in the sum of not more than $200.00 to the effect that if the appellant does not recover more by the verdict of the jury than the sum awarded by the appraisers, or if the verdict is not more favorable to him, he will pay costs of the appeal. He shall state definitely from what part of the order he appeals.

"The appeals shall be from the award of compensation or damages or *benefits,* or one or more of them, but from no other part of the decree of the court. * * *

"In case an appeal is taken to a jury from the assessment of benefits, the court shall direct the directors to present a petition embodying the facts and the claim they make in short form, which shall be filed in the county in which the land is situated. Whereupon a jury shall be empaneled according to law to try the issue presented."

The act directs "a jury shall be empaneled according to law to try the issue presented." What, then, is the issue presented? When we ascertain that, the established principles of procedure will apply and will fix the burden of proof. The burden is upon him who asserts the affirmative of the issue whether he happens to occupy the position of plaintiff or defendant. *Joint Board of County Commissioners et al.* v. *Whisler et al.,* 82 Ohio St., 234, 235.

From all of the foregoing it appears that there is provided a special method of attack on the determination by the board of appraisers and the court in respect to the benefits. While it has been designated an appeal, in determining its nature and in construing how the legislature intended it to operate consideration may be given to the character of the finding which it is to review.

By the English common law the judgments of inferior courts were brought under the review of the King's Bench for revision and correction by writ of error, writ of certiorari, or writ of false judgment. In courts which derive their procedure from the civil law, namely, equity, admiralty and ecclesiastical courts, the process for reviewing all decrees is designated an appeal. (3 Corpus Juris, 299.) In popular parlance the word "appeal" is frequently used to cover other methods of review than that which is technically and properly so called. (*County of Miami* v. *Dayton,* 92 Ohio St., 215, 218.) Section 6, Article IV of the Constitution, provides for appeals to the court of appeals in chancery cases and indicates a well-defined and well-known method of procedure whereby the whole case is tried anew. Such, however, does not appear to have been contemplated by the conservancy act, which specifically limits the matters to be passed upon at the jury trial to three specific questions: compensation, damages and benefits.

The imposition of the assessments under the act is in the exercise of powers of taxation, and is not the taking or condemnation of property. The matter of taxation should not be confused with the power of eminent domain. Each is governed by

its own principles.  *Houck* v. *Little River Drainage District,* 239 U. S., 254, 264.

The remedies of property holders in resisting assessments vary throughout the several states, and there are several methods by which assessments are attacked.  See 2 Page and Jones, Taxation by Assessment, Chapter 25, pages 1971 *et seq.*

The conservancy act has been compared by the supreme court in the *County of Miami case, supra,* to the drainage district laws of some of the other states.  We have made an examination of such laws, and while they do not control in ascertaining the meaning of our conservancy act, which depends upon the intent of the Ohio legislature, yet they reveal the origin of some of the language and provisions of the Ohio act and are illuminating when we undertake to construe it.  See Revised Statutes of Missouri, 1909, Chapter 41; Hurd's Revised Statutes of Illinois, 1917, Chapter 42; Burns' Annotated Statutes of Indiana, Chapter 56, and cf. Section 6143; Code of Iowa Supplement, 1913, Title X, Chapter 2-A, and cf. Section 1989-a14.

In Missouri the issue is (Section 5560) "whether the assessment of benefits * * * is too high."  And in all the instances found the complaining party, the "remonstrant" or "appellant," has the burden of proof.  See *Freesen* v. *Scott County Drainage Dist.,* 283 Ill., 536; *Rogers* v. *Venis,* 137 Ind., 221; *Conwell* v. *Tate,* 107 Ind., 171, 172; *Collins* v. *Board of Supervisors of Pottawattamie County,* 158 Iowa, 323; *Beals* v. *Brookline,* 174 Mass., 1; *Catron* v. *Deep Fork Drainage Dist. No. 1,* 35

Okla., 447, and 2 Page and Jones, Taxation by Assessment, Section 923.

Plaintiff in error cites *Joint Board of Commissioners* v. *Whisler,* 82 Ohio St., 234. The appeal authorized under the statute there in question was an appeal from the entire judgment of the commissioners, and the final determination of all matters was left to a trial *de novo* in the probate court. The distinction between such a case and the partial appeal on the sole question of the amount of benefits is made in the case of *Conwell* v. *Tate, supra.* The assessments levied under the conservancy act more nearly resemble street assessments in accordance with benefits, authorized under the municipal laws of this state. In those cases there is a determination by the municipal council that corresponds to the adjudication by the conservancy court.

As a general rule, the decisions of officers and tribunals specially created and charged, in tax laws, with the duty of fixing valuations for tax purposes, are final and conclusive. *Wagoner* v. *Loomis,* 37 Ohio St., 571; *Hagerty, Auditor, et al.* v. *Huddleston, Hubbard & Co.,* 60 Ohio St., 149, 165, and *McKnight* v. *Dudley,* 148 Fed. Rep., 204, 206.

And when an assessment has been levied the property holder must establish that it is excessive. *Cormany et al.* v. *City of Cincinnati et al.,* 10 Ohio App., 280, and *Spangler* v. *City of Cleveland,* 43 Ohio St., 526, 536, 537.

The form of the bond required to be given by the property holder who appeals indicates that the

question at issue is only whether or not the assessment for benefits should be reduced. If the whole matter were to be tried *de novo* there might conceivably be a finding by the jury that the benefits were greater than the amount assessed. The act does not disclose that the complaining property holder can be more unsuccessful than to fail to change the amount assessed. He can not make himself liable to an increased assessment by the result of the appeal. He was the remonstrant before the conservancy court to sustain his claim that the amount fixed by the appraisers was excessive, and his appeal gives an opportunity to raise that same question in a jury trial. The appeal, then, is a short method for the property owner to attack the assessment. The issue presented is whether the finding and judgment of the court as to the benefits exceed the actual benefits conferred. The affirmative of that proposition is maintained by the appealing property owner and the burden of proof is on him. It follows, therefore, that the court was correct in instructing the jury that the burden was upon the defendant.

Complaint is also made by the plaintiff in error that the court charged that the concurrence of all twelve jurors was required to render a verdict. The jurors were unanimous in their decision against him. It could not, therefore, have been prejudicial to him to require a unanimous verdict even if the law were that a verdict by nine jurors is sufficient. The result here shows that he is merely claiming that three more jurors found against him than the law required. It is unneces-

sary, therefore, for this court to consider whether or not there was error in that regard.

The judgment will be affirmed.

*Judgment affirmed.*

HAMILTON and CUSHING, JJ., concur.