## SILVEY et al. v. COMMISSIONERS OF MONTGOMERY COUNTY, OHIO, et al.

### (District Court, S. D. Ohio, W. D. June 1, 1921.)

### No. 29.

1. **Navigable waters ☞26(½)—One not injured in a manner different from the general public cannot complain of construction of dam without authority of Congress or Secretary of War.**

   Though storage dams constructed over the Great Miami river under the Ohio Conservancy Law were not authorized by act of Congress or Secretary of War, the United States only or some individual injured differently from the general public in degree and kind, can complain that the erection was in violation of Act March 3, 1899, § 10 (Comp. St. § 9910), on theory the river was navigable.

2. **Constitutional law ☞233, 290(1)—Conservancy Law held not to deprive taxpayer of property without due process, or deny equal protection.**

   The Conservancy Law of Ohio does not, as to a taxpayer of the city of Dayton, work a deprivation of property without due process of law, or deny equal protection of the law.

3. **Constitutional law ☞61—Ohio Conservancy Law, providing for organization and membership of common pleas court in district including more than one county, not an unlawful delegation of legislative power.**

   The Ohio Conservancy Law, by providing for the organization and membership of the common pleas court in a district embracing territory within more than one county, and conferring jurisdiction and authority on such court to establish conservancy districts, is not invalid under the state and federal Constitutions as unlawfully delegating legislative power to such court.

4. **Courts ☞366(30)—Propriety of authorizing local court to frame conservancy district is state question.**

   The propriety of delegating authority to a local court to frame a conservancy district is a state question.

5. **Constitutional law ☞127—Conservancy Law, intended to prevent floods, not a violation of home rule charter.**

   Though the city of Dayton, in 1913, prior to the passage of the Conservancy Law, and pursuant to Const. Ohio, art. 18, § 7, adopted a home rule charter, the powers conferred upon the city in view of section 3, article 18, are not only purely local and municipal, but are purely governmental, and the charter is not a contract which would render the subsequently enacted Conservancy Law, designed to prevent floods in that district, invalid as violating the contract.

6. **Municipal corporations ☞79—By granting home rule charter, state does not deprive itself of the right to exercise its police power.**

   In view of Const. Ohio, art. 18, § 3, the state does not, as to municipalities adopting, pursuant to section 7, a home rule charter, lose its right to exercise police and sanitary regulations; section 3 merely allowing the municipality to enforce local, police, and sanitary regulations not in conflict with the general law.

7. **Statutes ☞35½—An emergency act is not subject to referendum.**

   The Ohio Conservancy Law, declared to be an emergency act, necessary for the immediate preservation of public health and safety, by protecting cities, villages, farms, and highways from inundation, is not subject to the referendum authorized by Const. Ohio, art. 2, § 1e, or the charter of the city of Dayton or Const. art. 2, § 1d, recognizing the necessity of exempting emergency acts from referendum.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

8. **Constitutional law** ⟨key⟩254, 290(1)—**Provisions of Ohio Conservancy Law for appointment of officers or assessment are not invalid under Fourteenth Amendment.**

Const. U. S. Amend. 14, does not deprive the state of Ohio of the power of determining whether officers of the conservancy district shall be appointed or elected by the people, or prescribing the duties to be performed, nor does such amendment invalidate a tax levy, or an assessment lawfully made by such officers for a duly authorized improvement.

9. **Courts** ⟨key⟩284—**Suit for injunction, based on federal question decided by previous decisions, will be dismissed.**

Following the familiar practice of the Supreme Court, for the purpose of discouraging frivolous appeals and writs of error dependent on the existence of a federal question, to dismiss the same without consideration of the merits, if the question has been explicitly foreclosed by previous decisions, so as to leave no room for controversy, a suit for injunction involving only frivolous federal questions will be dismissed.

10. **Courts** ⟨key⟩262(4)—**Where it was doubtful whether officers of district were state officials, application for temporary injunction, under Judicial Code, § 266, will merely be dismissed.**

It being doubtful whether officers of an Ohio conservancy district were state officials, in such a sense as to justify a hearing or an application for temporary injunction, pursuant to Judicial Code, § 266, the federal District Court as constituted under such section, consisting of at least one Circuit and two District Judges, will merely deny an application for temporary injunction, and though complainant appeared entitled to no relief, will leave the question of the denial of the bill for determination of the judge of the district.

In Equity. Suit by William L. Silvey and others against the Commissioners of Montgomery County, Ohio, and others. On application for temporary injunction. Denied.

Alexander R. Hawthorne, of Troy, Ohio, for plaintiffs.

John A. McMahon and O. B. Brown, both of Dayton, Ohio, for defendants.

Before DENISON, Circuit Judge, and SATER and PECK, District Judges.

PER CURIAM. The plaintiff, a taxpayer of the city of Dayton, Ohio, and a citizen of Ohio, for himself and others similarly situated, assails the constitutionality of the Conservancy Law of Ohio, entitled:

"An act to prevent floods, to protect cities, villages, farms and highways from inundation, and to authorize the organization of drainage and conservation districts." 104 O. L. 13.

The city of Dayton, Ohio, certain of its officers, the Miami Conservancy District, and several railroad corporations are made defendants. A hearing on the plaintiff's application for a temporary injunction has been had in accordance with the requirements of section 266 of the Judicial Code (Comp. St. § 1243).

[1] The claim is vaguely made that the construction of storage dams by the Miami Conservancy District across the Great Miami river and its tributaries and the Miami and Erie Canal has not been affirmatively authorized by Congress, that no plans were submitted to or recommended by the Chief of Engineers or authorized by the Secretary

of War for the building of such dams, and that therefore their erection is in violation of section 10 of the Act of March 3, 1899, 30 Stat. 1151 (section 9910, Comp. Stat.). In Koehne v. City of Dayton, 97 Ohio St. 341, 119 N. E. 651, it was held that the Great Miami river is not a navigable stream at any of the points at which dams are in process of erection, and that neither such dams nor the public works incident to future protection against floods in any wise impede or impair navigation; but, aside from the conclusion thus reached by the state court, the fact still remains, if the plaintiff's contention be true, that the only party entitled to complain of the action taken is the United States, unless the plaintiff is individually injured differently from the general public in degree and kind. Mayor of Georgetown v. Alexandria Canal Co., 12 Pet. 91, 98, 9 L. Ed. 1012; Carver v. San Pedro, L. A. & S. L. R. Co. (C. C.) 151 Fed. 334. The plaintiff has not brought himself within the prescribed exception.

The act in question is charged to be obnoxious in 6 different respects to the Constitution of the United States and to some 37 provisions of the Constitution of Ohio. Most of the objections urged are unimportant and even frivolous. Only those will be considered which are deemed worthy of notice.

[2] The bill charges that the act deprives the plaintiff and other similarly situated property owners of their property without due process of law and denies them the equal protection of the law. The fallacy of this claim has been conclusively settled by Miami County v. Dayton, 92 Ohio St. 215, 110 N. E. 726, Orr v. Allen (D. C.) 245 Fed. 486 (a three-judge case), and Orr v. Allen, 248 U. S. 35, 39 Sup. Ct. 23, 63 L. Ed. 109. See, also, O'Neill v. Leamer, 239 U. S. at page 253, 36 Sup. Ct. 54, 60 L. Ed. 249.

[3, 4] The averment is made that the Conservancy Act, by providing for the organization and membership of the common pleas court in a district embracing territory within more than one county, and by conferring jurisdiction and authority on such court to establish conservancy districts, delegates legislative power to such court, and thereby violates both the state and the federal Constitution. This contention was decided adversely to plaintiff in Snyder v. Deeds, 91 Ohio St. 407, 110 N. E. 1068, and Miami County v. Dayton, 92 Ohio St. 215, 234, 235, 110 N. E. 726. Drainage or conservancy districts may, like school districts, be established by legislative sanction. The power conferred on the court of common pleas is not unlike that delegated to township trustees, county commissioners, and other bodies, authorizing them to organize districts for the construction of public improvements and for taxing or assessing the lands benefited thereby. Such enactments have almost uniformly been held to be a delegation of legislative power, not prohibited by the organic law. The propriety of delegating authority to a local court to frame a conservancy district is, in any event, a state question. O'Neill v. Leamer, 239 U. S. at pages 247, 248, 253, 36 Sup. Ct. 54, 60 L. Ed. 249.

[5] On August 12, 1913, prior to the passage of the Conservancy Law, the city of Dayton, by virtue of section 7, art. 18, of the state

Constitution, providing for home rule by municipalities, adopted a charter securing to itself local self-government. The plaintiff claims that by the adoption of such charter the city and the state of Ohio became bound in contract, whereby there were vested in the city's officers all matters of local improvements and taxation, and that legislative enactments involving the exercise of the police power, and seeking to guard the public health, safety, convenience, and welfare, are without application to such municipality. It is averred that the officials charged with the execution of the provisions of the Conservancy Act are appropriating property of and within the city and availing themselves of funds realized by the taxation of such property, and in so conducting themselves are impairing the obligations of the contract existing between the city and the state, and consequently violating both the state and the federal Constitutions. If the officials of the conservancy district are abusing the power conferred on them by statute, that fact cannot be considered as action of the state forbidden by the federal Constitution. It is also clear that the home rule provisions of the Ohio Constitution authorize and the adoption of the Dayton charter thereunder constitutes governmental and not contractual action. Section 3 of article 18 provides that—

"Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary, and other similar regulations, as are not in conflict with general laws."

The powers conferred upon chartered cities by the provisions of sections 3 and 7, art. 18, are not only purely local and purely municipal, but purely governmental. State v. Cooper, 97 Ohio St. 86, 91, 119 N. E. 253; State v. French, 96 Ohio St. 172, 184, 117 N. E. 173, Ann. Cas. 1918C, 896; State v. Lynch, 88 Ohio St. 71, 102 N. E. 670, 48 L. R. A. (N. S.) 720, Ann. Cas. 1914D, 949. These cases cannot be reconciled with the theory of a contractual relation between the city and the state. Prior to the decision of Miami County v. Dayton, the Supreme Court not only knew that the city of Dayton had adopted a charter in pursuance of the home rule provisions of the Constitution, but had considered certain features of such charter. State v. Edwards, 90 Ohio St. 305, 107 N. E. 768. In the Dayton Case the court found no inconsistency in the coexistence and contemporaneous operation of the Conservancy Act and the home rule method of government that may have been adopted by any municipality within the bounds of the conservancy district, and expressly held, in 92 Ohio St. at page 236, 110 N. E. 732, that the home rule doctrine in no wise applies to the creation of drainage or conservancy districts where the power to be exercised is peculiarly a state, sovereign, police power.

[6] The state could not bargain with or deprive itself of the right properly to exercise its police power, nor could the city of Dayton bind itself by a contract which is or might become injurious to the peace, order, health, or welfare of its people. Telephone Co. v. Cleveland, 98 Ohio St. 358, 365, 121 N. E. 701; Stone v. Mississippi, 101 U. S. 814, 819, 25 L. Ed. 1079. The general laws referred to in sec-

tion 3 of article 18 are those relating to police, sanitary, and other similar regulations, which operate uniformly throughout the state. The enactment of such general laws still rests in the Legislature. They provide for the peace, health, welfare, and convenience of all the people, entirely separate and distinct from and without reference to any of the state's political subdivisions. Fitzgerald v. Cleveland, 88 Ohio St. 338, 359, 103 N. E. 512, Ann. Cas. 1915B, 106.

[7] The act, as is permitted by section 1d, art. 2, of the Constitution of Ohio, was declared to be an emergency act, necessary for the immediate preservation of the public health and safety (section 79), and was not, therefore, as claimed by the plaintiff, subject to a referendum authorized either by section 1e, art. 2, or by the charter of the city of Dayton. The reasons given in section 79 of the act for declaring it an emergency law were held sufficient in Snyder v. Deeds, 91 Ohio St. 407, 408, 110 N. E. 1068. In view of such declaration, the ill-defined insistence that the law should have been submitted to a referendum is without merit. In adopting the initiative and referendum feature of government, the state recognized the absolute necessity of exempting therefrom laws of an emergency nature involving the general health, peace and safety. Shryock v. Zanesville, 92 Ohio St. 375, 385, 110 N. E. 937; Billings v. Railway Co., 92 Ohio St. 478, 484, 485, 111 N. E. 155.

[8] The Fourteenth Amendment to the federal Constitution does not deprive the state of the power of determining whether the officers of the conservancy district shall be appointed or be elected by the people, or the duties to be performed by them; nor does it invalidate a tax levy or an assessment lawfully made by such officers for a duly authorized improvement, or deprive the district as a political subdivision of the power to levy and collect taxes or assessments to pay the amount charged against property or political subdivisions, such as municipalities, counties, or townships, within such district. Soliah v. Heskin, 222 U. S. 522, 32 Sup. Ct. 103, 56 L. Ed. 294.

Without entering upon a further detailed consideration of the case, it may be said that every substantial objection now urged against the Conservancy Act and depending upon the federal or state Constitution or laws has been decided adversely to the plaintiff, as will appear from Miami County v. Dayton, 92 Ohio St. 215, 110 N. E. 726; Snyder v. Deeds, 91 Ohio St. 407, 110 N. E. 1068; Orr v. Allen (D. C.) 245 Fed. 486, affirmed 248 U. S. 35, 39 Sup. Ct. 23, 63 L. Ed. 109; Koehne v. City of Dayton, 97 Ohio St. 341, 119 N. E. 651, and from the unreported cases of County of Miami v. Deeds, No. 15,347, Koehne v. Miami Conservancy District, No. 15,779, Blevins v. Miami Conservancy District, No. 15,965, Hawthorne v. City of Troy, No. 16,653, and State ex rel. Silvey and Blevins v. Miami Conservancy District, No. 16,699, 130 N. E. 943, all decided by the Supreme Court of Ohio. Rarely has a law been found which has been assailed with such frequency or from so many angles. It has withstood every test. The Ohio courts for some time past, as evidenced by many cases, have treated its constitutionality as settled beyond controversy, some

of which cases are Koehne v. City of Dayton, 97 Ohio St. 341, 119 N. E. 651; Miami Conservancy District v. Mitman, 100 Ohio St. 315, 125 N. E. 875; Miami Conservancy District v. Bowers, 100 Ohio St. 317, 125 N. E. 876; State ex rel. Silvey v. Conservancy Dist. Co., 100 Ohio St. 483, 128 N. E. 87; State v. Valentine, 94 Ohio St. 440, 114 N. E. 947; County of Miami v. Deeds, 5 Ohio App. 408; Miami Conservancy District v. Mitman, 11 Ohio App. 106; Brady v. Miami Conservancy District, 11 Ohio App. 240; Miami Conservancy District v. Shade, 12 Ohio App. 169; Miami Conservancy District v. Bowers, 12 Ohio App. 405.

[9] The views above expressed require a denial of injunctive relief, because the bill not only fails to state a case warranting the same, but the claims of federal jurisdiction therein set forth are frivolous. It is familiar practice for the Supreme Court, for the purpose of discouraging frivolous appeals and writs of error which depend on the existence of a federal question, to dismiss the same without considering the merits of the question, if it has been so explicitly foreclosed by previous decisions as to leave no room for real controversy. Leonard v. Vicksburg, etc., R. R. Co., 198 U. S. 416, 422, 25 Sup. Ct. 750, 49 L. Ed. 1108; Equitable Life Assur. Soc. v. Brown, 187 U. S. 308, 311, 23 Sup. Ct. 123, 47 L. Ed. 190; Blythe v. Hinckley, 180 U. S. 333, 338, 21 Sup. Ct. 390, 45 L. Ed. 557; Chanute City v. Trader, 132 U. S. 210, 10 Sup. Ct. 67, 33 L. Ed. 345.

[10] Owing to the existence of a serious doubt as to whether the conservancy district officers are state officers in such a sense as to justify a hearing under section 266, Judicial Code, the court as constituted under this section will not go further than to deny an injunction. If the motion to dismiss the bill is to be granted, so as to make a final order, the hearing of such motion and the making of such order will be for the judge of the district.