### LEVERING & GARRIGUES CO. et al. v. MORRIN et al.
### No. 50.

Circuit Court of Appeals, Second Circuit.
Aug. 23, 1932.

See, also, 45 F.(2d) 399.

Frank P. Walsh, of New York City (Harold Stern, of New York City, of counsel), for appellants.

Edward Maxson, of Summit, N. J. (Merritt Lane, of Summit, N. J., of counsel), for appellees.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

SWAN, Circuit Judge.

The plaintiffs are four corporations, three of which were organized under the laws of New Jersey and the fourth under the laws of Pennsylvania. They were engaged in fabricating outside of, and erecting within, the state of New York, and elsewhere, structural iron and steel. The steel was specially fabricated for a particular building, and each plaintiff engaged in the work of erecting its steel under a subcontract made with the general contractor for the building. The plaintiffs were members of the Iron League of New York, an association of employers engaged in the erection of steel, and since 1906 the members of this organization have carried on their work under what is known as the "open shop" method; that is, they select their employees without reference to membership or nonmembership in a labor union. The defendants are Paul J. Morrin, "individually and as president" of International Association of Bridge, Structural, and Ornamental Iron Workers (a voluntary labor organization hereinafter referred to as the International), and several local labor unions and their officers and agents. The bill of complaint charges that the defendants are attempting to compel the plaintiffs to operate upon a closed union shop basis, and that to effectuate this purpose they have, among other alleged illegal acts, put into effect a boycott of the plain-

tiffs within the metropolitan area in and about New York City by persuading, through threats and intimidation, owners, architects, and general contractors not to deal with the plaintiffs. The referee, who took and reported voluminous evidence, found as a fact that the boycotting charge was established and that the defendants intend to continue their efforts. His report was confirmed, and a permanent injunction issued to restrain the defendants from attempting to induce owners, architects, or general contractors to let no subcontracts to the plaintiffs for the erection of structural iron and steel on buildings being or to be erected in the metropolitan district of New York, by threatening that members of the unions associated with the International will refuse to work on buildings upon which the plaintiffs may have subcontracts, or by instigating sympathetic strikes on such buildings, or from otherwise attempting by coercive pressure, threats or intimidation, or other unlawful means, to compel or influence owners, architects, or general contractors not to patronize the plaintiffs. To reverse this decree and injunction, the defendants appealed.

After argument upon the merits, this appeal was reargued, at the suggestion of the court, upon questions of jurisdiction, and to these questions attention must first be directed.

█ Jurisdiction was based primarily on diversity of citizenship. As already noted, the plaintiffs were corporations of New Jersey and of Pennsylvania. The defendants against whom the decree was entered are the following: Paul J. Morrin, individually and as president of the International Association of Bridge, Structural, and Ornamental Iron Workers; William J. McGinn individually and as agent of said International; Local No. 40 of said International and Charles Massey, individually and as agent thereof; Local No. 361 of said International and Earl Calvert individually and as agent thereof; and Local No. 197 of said International. The bill of complaint alleges that Morrin is a citizen of Missouri and each of the other individual defendants a citizen of New York. Each of the three locals above named is alleged to be "a subsidiary local" of the International and "a resident, citizen and inhabitant of the State of New York." Local No. 40 is alleged to have its headquarters in Manhattan and Local No. 361 in Brooklyn; Local No. 197 is alleged to have "jurisdiction over stone derrickmen in the City of

New York." The International is alleged to be "a voluntary labor organization" and "a resident, citizen and inhabitant of the State of Missouri," but the International itself was not made a party defendant, although the case has been argued on the assumption that it was. None of the foregoing allegations of citizenship was denied in the answer, except with respect to McGinn, who set forth that he was a citizen of Massachusetts instead of New York. Although the venue was wrong as to Morrin and McGinn, objection to venue was a privilege personal to them and was waived by their failure to object. Seaboard, etc., Co. v. Chicago, etc., Ry. Co., 270 U. S. 363, 365, 46 S. Ct. 247, 70 L. Ed. 633.

█ When federal jurisdiction is grounded on diverse citizenship, it must affirmatively appear in the pleadings or from facts clearly proven that diversity of citizenship exists between all the plaintiffs on the one hand and all the defendants on the other. Strawbridge v. Curtiss, 3 Cranch, 267, 2 L. Ed. 435; Thomas v. Board of Trustees, 195 U. S. 207, 25 S. Ct. 24, 49 L. Ed. 160. For this purpose the shareholders of a corporation are conclusively presumed to be citizens of the state in which it was incorporated, and their citizenship is then attributed to the corporation. St. Louis & S. F. Ry. v. James, 161 U. S. 545, 554, 16 S. Ct. 621, 40 L. Ed. 802. The plaintiffs would have us apply a similar presumption as to unincorporated labor unions because under the doctrine of the Coronado Case, 259 U. S. 344, 42 S. Ct. 570, 66 L. Ed. 975, 27 A. L. R. 762, they may be sued in the association name. This decision liberalized procedure in this respect but did not hold that jurisdiction was to be correspondingly extended. That an unincorporated labor union is suable as a legal entity implies nothing as to the citizenship of its members for purposes of federal jurisdiction. See Dobie, Federal Jurisdiction & Procedure, p. 198. Moreover, in seeking to attach a presumption of citizenship in the state in which these unincorporated associations have their headquarters, the plaintiffs ignore the settled rule that the citizenship of the shareholders of a corporation attaches to the state of incorporation and not to the state in which the corporation has its principal place of business. Shaw v. Quincy Mining Co., 145 U. S. 444, 12 S. Ct. 935, 36 L. Ed. 768; Seaboard, etc., Co. v. Chicago, etc., Ry. Co., 270 U. S. 363, 366, 46 S. Ct. 247, 70 L. Ed. 633. Although the Supreme Court has not yet passed upon the precise

issue, its decisions as to a joint-stock company (Chapman v. Barney, 129 U. S. 677, 9 S. Ct. 426, 32 L. Ed. 800), a limited partnership association (Great Southern Fireproof Hotel Co. v. Jones, 177 U. S. 449, 20 S. Ct. 690, 44 L. Ed. 842), and a board of trustees (Thomas v. Board of Trustees, 195 U. S. 207, 25 S. Ct. 24, 49 L. Ed. 160), are strongly persuasive against the contention. In the case last cited it was held that an allegation that an unincorporated board of trustees is a citizen is not sufficient, and that there must also be an allegation that each member of the group has a citizenship different from that of the plaintiff. In the case at bar neither allegation nor proof asserts that all the members of the defendant unions are citizens of states other than New Jersey and Pennsylvania. In Russell v. Central Labor Union, 1 F.(2d) 412 (D. C. E. D. Ill.), it was held that, despite the Coronado Case, for purposes of federal jurisdiction the actual citizenship of the individual members of an unincorporated labor association was determinative; and this court held the same in Ex parte Edelstein, 30 F. (2d) 636, certiorari denied 279 U. S. 851, 49 S. Ct. 347, 73 L. Ed. 994; 42 Harv. L. Rev. 1079. See, also, Irving v. Joint District Council, 180 F. 896, 898 (C. C. N. Y.); Wise v. Brother of Locomotive Firemen and Enginemen, 252 F. 961, 965 (C. C. A. 8); 34 Yale L. J. 564; 38 Harv. L. Rev. 510; 5 Col. L. Rev. 246; 19 Ill. L. Rev. 596. We are not disposed to reverse our ruling in Ex parte Edelstein. Therefore the mere allegation that each of the local unions was a citizen of a state other than those of the plaintiffs was not sufficient to afford a basis for jurisdiction founded on diverse citizenship.

Before determining the effect of the failure to allege or prove diverse citizenship between the plaintiffs and the defendant labor unions, it will be well to consider the plaintiffs' contention that jurisdiction of the District Court may be sustained upon another ground. Paragraph 18 of the bill of complaint alleges that each of the plaintiffs is engaged in interstate commerce and that the defendants have entered into an illegal conspiracy in restraint of such commerce; paragraph 20 alleges a violation of the plaintiffs' constitutional rights; and paragraph 21 invokes jurisdiction under the Constitution and laws of the United States. These allegations the answer denied. Upon the issues of interference with interstate commerce and violation of the plaintiffs' constitutional rights, the referee found in favor of the defendants, and his conclusion was affirmed by the District Court.

That the decision on these points was right is clear beyond dispute. The theory of the eighteenth paragraph of the bill is that, since the steel to be erected by the plaintiffs in New York is shipped in from other states, the defendants' prevention of erection is an interference with interstate commerce. There is neither allegation nor proof that the activities of the defendants were in any way motivated by a desire to restrain the interstate trade of the plaintiffs. It is true that, to the extent that the defendants succeed in preventing the plaintiffs from procuring subcontracts with general contractors for buildings to be erected in New York, the plaintiffs will bring in from other states smaller quantities of steel than they otherwise would, but such an interference is too indirect, incidental, and remote to constitute a violation of the federal anti-trust laws. Industrial Association v. United States, 268 U. S. 64, 77, 82, 45 S. Ct. 403, 69 L. Ed. 849; Bedford Cut Stone Co. v. Stone Cutters' Ass'n, 274 U. S. 37, 46, 47 S. Ct. 522, 71 L. Ed. 916, 54 A. L. R. 791; United Leather Workers' International Union v. Herkert, 265 U. S. 457, 44 S. Ct. 623, 68 L. Ed. 1104, 33 A. L. R. 566; United Mine Workers v. Coronado Co., 259 U. S. 344, 410, 42 S. Ct. 570, 66 L. Ed. 975, 27 A. L. R. 762; Aeolian Co. v. Fischer, 29 F.(2d) 679 (C. C. A. 2); and see Anderson v. Shipowners' Ass'n, 272 U. S. 359, 364, 47 S. Ct. 125, 126, 71 L. Ed. 298, where it is said that building is not commerce and "the fact that the materials to be used are shipped in from other states does not make building a part of such interstate commerce." The acts of the defendants were directed toward preventing the use of the steel after it reached New York, and affected the transportation of it only indirectly. Even less can be said in support of the contention that constitutional rights of the plaintiffs were violated; indeed, this point was not even briefed on this appeal.

But the plaintiffs urge that, regardless of how these issues were decided, the assertion of a bona fide claim that the controversy involved the Constitution and laws of the United States gave the court jurisdiction to decide all questions involved in the case. They rely upon the familiar principle, reasserted with the citation of many authorities in Siler v. Louisville & Nashville R.

R. Co., 213 U. S. 175, at page 191, 29 S. Ct. 451, 454, 53 L. Ed. 753, where it is said: "The Federal questions as to the invalidity of the state statute because, as alleged, it was in violation of the Federal Constitution, gave the circuit court jurisdiction, and, having properly obtained it, that court had the right to decide all the questions in the case, even though it decided the Federal questions adversely to the party raising them, or even if it omitted to decide them at all, but decided the case on local or state questions only."

This principle has been frequently applied in subsequent cases. Louisville & N. R. R. Co. v. Garrett, 231 U. S. 298, 34 S. Ct. 48, 58 L. Ed. 229; Greene v. Louisville & Int. R. R. Co., 244 U. S. 499, 37 S. Ct. 673, 61 L. Ed. 1280, Ann. Cas. 1917E, 88; Lincoln Gas Co. v. Lincoln, 250 U. S. 256, 39 S. Ct. 454, 63 L. Ed. 968; Davis v. Wallace, 257 U. S. 478, 42 S. Ct. 164, 66 L. Ed. 325; Southern Ry. Co. v. Watts, 260 U. S. 519, 43 S. Ct. 192, 67 L. Ed. 375; Atlantic Coast Line Co. v. Doughton, 262 U. S. 413, 43 S. Ct. 620, 67 L. Ed. 1051; Chicago Great W. R. R. Co. v. Kendall, 266 U. S. 94, 45 S. Ct. 55, 69 L. Ed. 183. Yet it is not of universal application, for there is another familiar line of cases, where a charge of unfair competition is joined with a charge of patent or trade-mark infringement, in which, if the federal question is decided adversely to the plaintiff and no diversity of citizenship exists, the courts have held that there is no federal jurisdiction to pass upon the issue of unfair competition. Of such a situation the Supreme Court said, in Elgin National Watch Co. v. Illinois Watch Case Co., 179 U. S. 665, 677, 21 S. Ct. 270, 45 L. Ed. 365, that, "if the trade-mark were not lawfully registered, then jurisdiction could not be maintained." And this is substantially repeated in Leschen & Sons Rope Co. v. Broderick, 201 U. S. 166, 26 S. Ct. 425, 50 L. Ed. 710, and Stark Bros. Co. v. Stark, 255 U. S. 50, 52, 41 S. Ct. 221, 65 L. Ed. 496. See, also, Standard Paint Co. v. Trinidad Asph. Co., 220 U. S. 446, 456, 31 S. Ct. 456, 55 L. Ed. 536; Geneva Furniture Mfg. Co. v. S. Karpen & Bros., 238 U. S. 254, 35 S. Ct. 788, 59 L. Ed. 1295. Numerous lower court authorities, mostly to the same effect, are gathered in Judge Denison's interesting opinion in Vogue Co. v. Vogue Hat Co., 12 F.(2d) 991 (C. C. A. 6). See, also, Ingrassia v. A. C. W. Mfg. Corp., 24 F.(2d) 703 (C. C. A. 2); Schiebel Toy & Novelty Co. v. Clark, 217 F. 760 (C. C. A. 6); Kasch v. Cliett, 297 F. 169 (C. C. A. 5). Nowhere, so far as we are advised, has the Supreme Court alluded to the limitation which its pronouncement in the Elgin and Leschen Cases, impliedly puts upon the general principle of the Siler Case that a jurisdiction once acquired extends to all questions in the case. In the absence of an authoritative decision to point out the line of differentiation, we must attempt to harmonize the two lines of cases as best we may.

When a complaint challenges the validity of a state statute as infringing the Federal Constitution, questions depending upon the local law, such as the true interpretation of the statute, or its validity under the State Constitution, underlie the very foundation of the plaintiff's cause of action. Such questions are necessarily involved in the controversy presented to the federal court. Compare Barney v. City of New York, 193 U. S. 430, 24 S. Ct. 502, 48 L. Ed. 737, which, in so far as it implies the contrary, apparently is no longer the law. Raymond v. Chicago Union Traction Co., 207 U. S. 20, 28 S. Ct. 7, 52 L. Ed. 78, 12 Ann. Cas. 757; Home Tel. & Tel. Co. v. Los Angeles, 227 U. S. 278, 33 S. Ct. 312, 57 L. Ed. 510; Iowa-Des Moines Nat. Bank v. Bennett, 284 U. S. 239, 246, 52 S. Ct. 133, 76 L. Ed. 265. See 40 Harv. L. Rev. 969. The court must have power to decide these preliminary questions in order to reach the ultimate question involving the Federal Constitution, and it may well place its decision upon such local grounds rather than the federal one if it prefers to avoid a decision of the latter, or even though it does decide it and adversely to the plaintiff. Such, if we understand it, is the ratio decidendi of the Siler Case and the others following it where a substantial federal constitutional question is asserted. When, however, the complaint charges the defendant with conduct alleged to violate both a federal statute, such as the Trade-Mark or Patent Act, and also the local law as to unfair competition, the local question is independent of the federal question and is in no sense the foundation of the plaintiff's asserted federal right. Hence, if the latter is found not to exist, there is no basis for ascribing to the court a jurisdiction to decide the independent nonfederal question. Cf. Tullar & Tullar v. Ill. Central R. R. Co., 213 F. 280, 283 (D. C. N. D. Iowa). This we believe to be the distinction between the two lines of cases under discussion. We think it is consistent with the actual decisions of the Supreme Court, although no au-

thority has been found which has clearly enunciated it, and it must, indeed, be recognized as scarcely consistent with some of the views expressed in Judge Denison's learned opinion in Vogue Co. v. Vogue Hat Co., 12 F.(2d) 991 (C. C. A. 6). Cf. 40 Harv. L. Rev. 298. In General Investment Co. v. Lake Shore, etc., Ry. Co., 260 U. S. 261, 43 S. Ct. 106, 67 L. Ed. 244, there were as here two causes of action—one, under the anti-trust laws; the other, under the state law. There was federal jurisdiction over the second because of diverse citizenship. The Supreme Court did not suggest that the jurisdiction over the second rested upon that over the first. Its decision at most goes no further than that a cause of action between diverse citizens would follow into the District Court a cause of action arising under laws of the United States when the removal was upon the second ground alone. That is quite another question from the substantive jurisdiction over the second cause of action; moreover, the Supreme Court actually disposed of the second cause of action on the merits, while dismissing the first for lack of jurisdiction. Obviously, therefore, however the second got into the District Court, the power to adjudicate upon it could not be ancillary to jurisdiction over the first. Judge Denison, anticipating his view expressed in Vogue Co. v. Vogue Hat Co., supra, did invoke the Siler Case, but even then as a dictum, because he thought that federal jurisdiction existed quite independently ([C. C. A.] 269 F. 235, 241), just as the Supreme Court did. The case does not, therefore, stand against our view. It is confirmed, moreover, by the language of Mr. Justice Holmes in Stark Bros. Co. v. Stark, 255 U. S. 50, 51, 41 S. Ct. 221, 65 L. Ed. 496: "The infringement that is sued for is infringement of a registered trade-mark, not infringement of a trade-mark. That is the plain meaning of the above words and the necessary scope of this suit since that is the scope of the jurisdiction of the District Court. A. Leschen & Sons Rope Co. v. Broderick & Bascom Rope Co., 201 U. S. 166, 172, 26 S. Ct. 425, 50 L. Ed. 710. It seems very plain that the plaintiff had a cause of action outside the statute, but that would have to be asserted elsewhere, as the suit was between citizens of the same State. The statute alone gave the right to come into this Court of the United States. Coming in to assert its statutory rights we will assume in the plaintiff's favor that it could recover for unfair competition that was inseparable from the statutory

wrong, but it could not reach back and recover for earlier injuries to rights derived from a different source." Compare Pittsburgh & W. Va. Ry. v. United States, 281 U. S. 479, 488, 50 S. Ct. 378, 74 L. Ed. 980; see, also, Geneva Furniture Co. v. Karpen, 238 U. S. 254, 259, 35 S. Ct. 788, 59 L. Ed. 1295.

In the case at bar the plaintiffs assert two independent causes of action. Primarily they rest jurisdiction upon diversity of citizenship (without, as has been shown, proper allegations or proof thereof) and complain of an alleged illegal boycott as a tortious interference with rights which are not derived from federal statute or Constitution; and, secondarily, and almost as a makeweight, they allege interference with interstate commerce and apparently assert a right to sue under the federal anti-trust statutes. The additional claim of a violation of constitutional rights is so unsubstantial that no further mention of it is required. Here the nonstatutory right primarily relied upon is in no sense the foundation of the right asserted under the federal statute. The two claims are as independent of one another as were the statutory trade-mark infringement and the unfair competition in trade which were joined in a single complaint in the Leschen Case, and similar decisions above discussed. The rule of those cases rather than that of the Siler Case should govern.

There is another consideration which might be urged as leading to the same result even if the Siler rule were held applicable. Concededly the alleged claim of federal jurisdiction must be substantial and not frivolous. Minnesota v. Northern Securities Co., 194 U. S. 48, 24 S. Ct. 598, 48 L. Ed. 870. In other words, a plaintiff may not base a claim for relief upon a federal ground which has been authoritatively decided against him, and still demand that the court pass upon other questions of which it would have no jurisdiction except for the claim based on Federal Constitution or statute. See Bianchi v. Morales, 262 U. S. 170, 172, 43 S. Ct. 526, 67 L. Ed. 928; Niles-Bement-Pond Co. v. Iron Moulders' Union, 254 U. S. 77, 82, 41 S. Ct. 39, 65 L. Ed. 145; Colonial Drug & Sales Co. v. Western Products Co., 54 F.(2d) 216, 219 (C. C. A. 10); Wallace Ranch Water Co. v. Rd. Commission, 47 F. (2d) 8 (C. C. A. 9); Postal Tel. Cable Co. v. Nolan, 240 F. 754 (D. C. Mont.); Silvey v. Commissioners, 273 F. 202, 207 (D. C. S. D. Ohio). It may well be doubted whether the plaintiffs' claim under the anti-

trust laws could be deemed substantial. They urge that their bill was filed in March, 1925, and that the situation must be looked at as of that time rather than in the light of subsequent decisions. See Boston Store v. Am. Graphophone Co., 246 U. S. 8, 26, 38 S. Ct. 257, 62 L. Ed. 551, Ann. Cas. 1918C, 447; Michigan Central R. R. Co. v. Vreeland, 227 U. S. 59, 63, 33 S. Ct. 192, 57 L. Ed. 417, Ann. Cas. 1914C, 176. We are inclined to believe that the question could not properly be thought doubtful even when the bill was filed, for the effect of an indirect, incidental, and remote interference with interstate commerce such as that alleged in the case at bar had already been considered in United Mine Workers v. Coronado Co., 259 U. S. 344, 410, 42 S. Ct. 570, 66 L. Ed. 975, 27 A. L. R. 762, and United Leather Workers' International Union v. Herkert, 265 U. S. 457, 44 S. Ct. 623, 68 L. Ed. 1104, 33 A. L. R. 566, as was pointed out in the Industrial Association Case, 268 U. S. 64, 80, 45 S. Ct. 403, 69 L. Ed. 849; but we do not decide this point nor rest our decision upon it.

For the foregoing reasons we conclude that jurisdiction must depend on diverse citizenship, and that, while the allegations as to this were sufficient with respect to the individual defendants, they were insufficient as to the defendant labor unions. What judgment, then, is this court to render?

Where several plaintiffs sue several defendants in a federal court and jurisdiction rests on diverse citizenship, each plaintiff must be capable of suing each defendant. Strawbridge v. Curtiss, 3 Cranch, 267, 2 L. Ed. 435. Nor is it material that the plaintiffs need not have sued jointly in a case where they have elected to do so. Peninsular Iron Co. v. Stone, 121 U. S. 631, 7 S. Ct. 1010, 30 L. Ed. 1020. The same rule is equally applicable where a plaintiff sues joint and several tort-feasors. That he was not compelled to join the defendants whose presence destroys federal jurisdiction does not aid him, unless, as is not the case here, those defendants are merely formal parties. Danks v. Gordon, 272 F. 821 (C. C. A. 2); Matthew v. Coppin, 32 F.(2d) 100 (C. C. A. 9); Wetherby v. Stinson, 62 F. 173 (C. C. A. 7); Pirie v. Tvedt, 115 U. S. 41, 5 S. Ct. 1034, 1161, 29 L. Ed. 331. If the party improperly joined is not indispensable, the jurisdictional defect may be cured by a motion in the trial court to amend and dismiss as to him. Horn v. Lockhart, 17 Wall. 570, 21 L. Ed. 657; Hopkins v. Oxley Stave Co., 83 F. 912 (C. C. A. 8); Mason v. Dullagham, 82 F. 689 (C. C. A. 7); Smith v. Consumers' Cotton-Oil Co., 86 F. 359 (C. C. A. 5); Irving v. Joint District Council, 180 F. 896 (C. C. A. N. Y.). Such a motion cannot be made in an appellate court. Denny v. Pironi, 141 U. S. 121, 11 S. Ct. 966, 35 L. Ed. 657. Section 274c of the Judicial Code (28 USCA § 399), permits correction of the pleadings to conform to the proof, but that does not avail here, for it does not appear that in fact the necessary diversity existed. An appellate court must reverse for want of jurisdiction, but may give leave to the trial court to permit correction by amendment of the pleadings. Halsted v. Buster, 119 U. S. 341, 7 S. Ct. 276, 30 L. Ed. 462; Thomas v. Anderson, 223 F. 41 (C. C. A. 8); Watson v. Bonfils, 116 F. 157 (C. C. A. 8); Matthew v. Coppin, supra; Grove v. Grove, 93 F. 865 (C. C. Kan.). Although this court apparently dismissed in toto in Danks v. Gordon, supra, and Carpenter v. Carden, 294 F. 515 [see, also, Devost v. Twin State G. & E. Co., 250 F. 349 (C. C. A. 1)], we think this is not necessary here. The District Court should have leave to allow the plaintiffs to amend by dismissing as against the locals, or by inserting appropriate allegations to show that none of their members was a citizen of New Jersey or Pennsylvania when the bill was filed, if such be the fact. If the former alternative be adopted, there is authority for allowing the record to stand as already taken, and to enter a decree thereon against the individuals, provided it appears that all the evidence remains equally admissible with the dismissed defendants out. Interstate Refineries, Inc., v. Barry, 7 F.(2d) 548, 550 (C. C. A. 8); Atchison, T. & S. F. Ry. Co. v. Gilliland, 193 F. 608 (C. C. A. 9); Fitchburg R. Co. v. Nichols, 85 F. 869 (C. C. A. 1); Maddox v. Thorn, 60 F. 217 (C. C. A. 5); Williams v. Great So. Lumber Co., 13 F.(2d) 246 (D. C. E. D. La.), reversed on other grounds in 17 F.(2d) 468, 470 (C. C. A. 5). This is a matter for the District Court to determine; as is also the question whether recent legislation by Congress (Public Act No. 65, approved March 23, 1932 [29 USCA §§ 101–115]) has any application to further proceedings in this suit.

Decree reversed, with directions to dismiss the complaint without prejudice, for lack of jurisdiction, unless the plaintiffs shall amend to correct the jurisdictional defect.

No costs of appeal awarded either party.