MUSKINGUM WATERSHED CONSERVANCY DISTRICT, APPELLEE, *v.* SEIBERT, APPELLANT.

(Decided February 23, 1937.)

*Messrs. Wilkin, Fisher & Limbach,* for appellee.
*Messrs. Sponseller & Sponseller,* for appellant.

BY THE COURT. On February 26, 1936, the Muskingum Watershed Conservancy District, appellee, filed with the clerk of courts its appraisal record pursuant

to Section 6828-30, General Code. Thereupon the clerk caused notice to be published in compliance with Section 31 of the Conservancy Act, Section 6828-31, General Code, that all persons excepting to any part thereof were required to file their exceptions on or before the twenty-third day of March, which date was the tenth day after the last publication of notice. On the 28th day of April, the appellant, Wesley J. Seibert, filed his exceptions with the clerk. Thereafter, on November 31, the Conservancy Court confirmed the appraisal record and ordered that all exceptions filed after March 23rd be stricken from the files. On November 30th, next, appellant, under Section 34 of the Conservancy Act, Section 6828-34, General Code, filed his notice of appeal and demand for a trial by jury, which the Conservancy Court denied on January 5, 1937. It is from these two orders that appeal is prosecuted.

The appellant asserts as a matter of fact that he was never personally served with notice of the filing of the appraisal record and apprised of the final date for filing exceptions thereto; that he had no actual notice thereof until after the expiration date; that the published notice did not name him as an interested party, and that his lands were not individually or specifically described therein. As a matter of law it is urged "that the taking of a flood easement upon his property without any opportunity to object to the finding of the appraisers of the conservancy district is taking his property without due process of law and depriving him of said property without just compensation, in violation of Amendment V of the Constitution of the United States and Article I, Section 19, of the Constitution of the state of Ohio." The assignments of error in fact question the constitutionality of the entire act and particularly that part thereof, Sections 30 to 34, inclusive, (Sections 6828-30 to 6828-34,

General Code), which prescribes the method of procedure in awarding damages and the manner and form of the notice to be given affected property owners.

We deem it of little value to here set forth the contents of these sections inasmuch as the act in its entirety was held constitutional in *County of Miami* v. *City of Dayton*, 92 Ohio St., 215, 110 N. E., 726. It likewise found approval in the federal courts in *Silvey* v. *Commissioners*, 273 F., 202, and again in *Miami Conservancy District* v. *Bowers*, 100 Ohio St., 317, 125 N. E., 876, the court concluded that the appropriation of one's property by the appraisal method outlined in the specially questioned sections was not a taking of property without due process of law contrary to Section 19 of Article I of the state Constitution.

And now coming to the principal objection. It is claimed that appellant was "without any opportunity to object to the finding of the appraisers." Section 32 (Section 6828-32, General Code) reads:

"Any property owner may accept the appraisals in his favor of benefits and of damages and of lands to be taken made by the appraisers, or may acquiesce in their failure to appraise damages in his favor, and shall be construed to have done so unless he shall within ten days after the last publication provided for in the preceding section file exceptions to said report or to any appraisal of either benefits or damages or of land to be taken which may be appropriated."

By compliance with this section and the procedure prescribed and followed, it is urged that opportunity was not had, because there was no personal service, and the appellant was not named or his lands specifically described. If this were an action *in personam* the sufficiency thereof might well be questioned; but such is not true, for this is an action *in rem* which affects many parcels of land located in the flood area. It is indeed doubtful that the record titles could be relied

upon to establish the true owners of the separate tracts, for death and resultant testacy and intestacy are constantly changing ownership. It is further made difficult by the delay in recording instruments of conveyance, the various estates in land, and the fact that owners may and do reside in different counties and states, and that it would be highly impracticable to treat each tract separately. The fact is that the lands are generally described. It is to be presumed of all owners, save minors and those of unsound mind, that they know within what municipality or township their land is located; but it is doubtful if more than a small percent know, without first advising themselves, their lot number or the section, township and range within which the land lies. It may further be said that the purpose and plan of the conservancy district has for several years received frequent wide publicity, and it may with propriety be said that the same has become a matter of common knowledge and we seriously doubt if any owner, save those under disability, lacked knowledge of his land's proximity to any undertaking and that it would be benefited or damaged thereby. We make these observations with the thought in mind of establishing that a necessity for group service did exist and was apt to accomplish the purpose of actual service usually provided. Now may this be done without violence to the due process clauses found in both constitutions? We think so.

The writer of the substance appearing in 21 Ruling Case Law, 1282, has this to say with respect to the general rule:

"The right to personal service is not a law of nature, nor does the guaranty of 'due process of law' necessarily require personal service of notice on parties either resident or nonresident. The legislature may, in its discretion, provide for substituted service in case of necessity, or where personal notice is for any

reason impracticable, in an action where the controversy relates to property which is within the jurisdiction of the court; and with a reasonable exercise of such legislative discretion the courts will not assume to interfere.''

The cases which subscribe to this view are to be found gathered in the note appearing in 64 A. L. R., 764. Therein it is said:

''It is almost uniformly held that where there is provided in special assessment proceedings for the levying of benefits to defray the cost of an improvement, a means whereby damages to property, sustained in the construction or maintenance of the improvement, may be ascertained, a property owner who fails to make claim in such proceedings for compensation for damages suffered by him is precluded from suing to recover such damages.''

Therein are found listed two Ohio cases upon which the appellee relies: *Cupp* v. *Commissioners*, 19 Ohio St., 173, and *Commissioners* v. *Gates*, 83 Ohio St., 19, 93 N. E., 255. These cases both deal with county ditch legislation. Both hold that personal service is not indispensable to the legality of the proceeding, and that a land owner may be deemed to have waived his right to except if he delay or neglect to file his application within the time prescribed.

There is a further Ohio case which bears upon the question, that is *State, ex rel.,* v. *Guilbert, Auditor,* 56 Ohio St., 575, 47 N. E., 551, 38 L. R. A., 519. This case has to do with the Torrens Act of land registration. Therein Judge Shauck, speaking for the court, remarks:

''That the legislature may provide for a substituted service of judicial process, when it is required by necessity, is not doubted. If, in a suit to adjudicate the rights of persons in property within the state, a defendant resides without the state, such necessity is apparent, for the process of the state has no efficacy

beyond its borders. Other cases of necessity are recognized.

"The principle is that the state may provide for the adjudication of all adversary rights of persons in property within its borders, and to the end that such jurisdiction may be complete the legislature may provide a substituted service of process for cases in which actual service cannot be made.

"In such case nothing more is required by the law of the land than that the substituted service shall be such as, in the exercise of legislative discretion, shall be found most apt to accomplish the purposes of actual service."

*Amici curiae* have been permitted to file briefs in this cause. They direct this court's attention to a Michigan authority decided April 15, 1936. Our search leads us to presume that *In re Auditor General, Appeal of Dutcher,* 275 Mich., 462, 266 N. W., 464, 107 A. L. R., 279, is intended. This was an attempt to sell lands for delinquent taxes. The notice given was a publication of the petition which did not contain a description of the lands or designation of the owner or owners thereof. It was held that such service denied due process of law. During the course of the opinion it is pointed out that tax sales for many years were a solemn court proceeding in chancery. It is held that "the Legislature did not intend this notice to constitute the equivalent of service of process." In the case before this court, considering the Ohio statute, we think it plain and clear that the legislative intent was otherwise. The Michigan authority further clearly points out that "the proceeding is one against each parcel of land severally." All land taxes are levied separately against each parcel in a taxing subdivision and the rates are subject to yearly change. But that is not the present case. Here damages are awarded to lands for injury done. Such may not cover an en-

tire taxing district. All lands are not affected alike. Here one proceeding is had to settle damage matters in a proceeding to establish and settle the cost of a great public project for all time. It affects only that portion of the taxing districts benefited and injured in the Muskingum Watershed. It is a voluminous undertaking which the general law did not anticipate might arise. Application of general rules of service would work an additional tremendous burden on the project's accomplishment. The Legislature sought to simplify the proceeding by the statutes in question. We do not think that the reason of the Michigan court is or should be dispositive of this controversy.

We are likewise directed to the case of *Morrison* v. *Indianapolis & W. Ry. Co.,* 166 Ind., 511, 76 N. E., 961, with the remark, that under a statute of that state, a similar requirement that an objection be filed within ten days was held not to be mandatory but directory only. This case was an appropriation proceeding by a railway to condemn land. Personal service was had. The law therein invoked prescribed that written objections ''shall be filed not later than the first appearance of such defendant.'' That is on the day the property owner was required to appear and answer. The record is silent as to whether he did appear on that date, but he did file within a few days after he did actually appear. The court found the statutes not to be clear as to which day was intended and that the objections were filed without objection from plaintiff, and since objections were filed on the day he did appear, the court said, ''that it should be construed as merely directory and that it does not strip the court of its discretionary power on a proper and sufficient showing on the part of the defendant, or upon the consent of the plaintiff to grant or permit an extension of the time beyond the day of the defendant's first appearance * * * to the proceedings.'' It will be noted

further that the precise question in the case now before the court was, in the Indiana case, conceded, but "without deciding"; due no doubt to uncertainty of the statutes of that state, the silence of the record, and the fact that objection was made on defendant's first appearance.

Sections 41, 72 and 74 of the Conservancy Act are strongly urged upon us. It is said that Section 41 provides for correction of faulty notice. To which we answer that we find no faults therein which deprive the defendant of "due process of law" as contended. The same may be said with respect to Section 72. It is maintained that Section 74 of the act requires and prescribes that its terms be liberally construed. It is therein said, "it shall be liberally construed to effect the control and conservation and drainage of the waters of the state." It does not say that the acquisition of lands and easements, the matter of benefits and ascertainment of damages, and the matter of assessments shall be so construed. This direction of the statute's construction rather alludes to the necessary doing of those things that are incident to the accomplishment of the purpose of the act and the general powers conferred to that end.

It is the judgment of this court that these sections specially questioned are constitutional; that appellant had due legal notice of the filing of the appraiser's report and that he had opportunity to object thereto; that he failed to file an exception within the prescribed time and must be deemed to have acquiesced in the report as filed; that the judgment of the Conservancy Court was correct. The judgment is therefore affirmed.

*Judgment affirmed.*

MONTGOMERY, P. J., SHERICK and LEMERT, JJ., concur.